IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

EMERSON ELECTRIC CO.,                    )
                                         )
            Plaintiff,                   )
                                         )
   v.                                    )   C. A. No. 17-1846-LPS
                                         )
EMERSON QUIET KOOL CO. LTD., and         )
HOME EASY LTD.,                          )
                                         )
            Defendants.                  )
_____)

## PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

YOUNG CONAWAY STARGATT
   & TAYLOR, LLP
Adam W. Poff (No. 3990)
Robert M. Vrana (No. 5666)
Rodney Square
1000 North King Street
Wilmington, DE  19801
302-571-6600
apoff@ycst.com
rvrana@ycst.com

HARNESS, DICKEY & PIERCE, PLC
Michael P. Brennan, *Of Counsel*
George D. Moustakas, *Of Counsel*
Lisa M. DuRoss, *Of Counsel*
5445 Corporate Drive, Suite 200
Troy, MI  48098
248-641-1600
mbrennan@hdp.com
gdmoustakas@hdp.com
Dated:  March 16, 2018                    lduross@hdp.com

*Attorneys for Plaintiff Emerson Electric Co.*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES.................................................................................................ii

I. NATURE AND STAGE OF THE PROCEEDINGS...........................................................1

II. SUMMARY OF THE ARGUMENT ...............................................................................1

III. ARGUMENT ...............................................................................................................3

    A.     Defendants Do Not Have Plaintiff's Consent To Use The EMERSON QUIET KOOL Mark .....................................................................................................3

    B.     Plaintiff's Claims Are Not Barred By The Doctrine of Laches .............................7

    C.     Plaintiff Has Standing To Bring Its Unfair Competition Claims .........................10

    D.     Plaintiff Has Properly Pled the Elements of Abandonment ..................................14

    E.     Defendants' Ownership Of The '893 Registration Does Not Preclude Plaintiff's Claims..........................................................................................................15

IV. CONCLUSION............................................................................................................16

i

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*A & H Sportswear, Inc. v. Victoria's Secret Stores, Inc.*,
  237 F.3d 198 (3d Cir. 2000) ....................................................................................11

*In re Adams Golf, Inc. Sec. Litig.*,
  381 F.3d 267 (3d Cir. 2004) ...................................................................................3, 7

*ARGOS v. Orthotec LLC*,
  304 F. Supp. 2d 591 (D. Del. 2004) ........................................................................16

*Barre-Nat'l, Inc. v. Barr Labs., Inc.*,
  773 F. Supp. 735 (D.N.J. 1991) ..............................................................................15

*Beijing Tong Ren Tang (USA), Corp. v. TRT USA Corp.*,
  2009 WL 5108578 (N.D. Cal. Dec. 18, 2009) ..........................................................3

*Bethel v. Jendoco Constr. Corp.*,
  570 F.2d 1168 (3d Cir. 1978) ....................................................................................8

*Chase Bank USA, N.A. v. Hess*,
  2013 U.S. Dist. LEXIS 32710, 2013 WL 867542 (D. Del. Mar. 7, 2013) ..............13

*Compagnie Des Bauxites de Guinee v. L'Union Atlantique S.A. D'Assurances*,
  723 F.2d 357 (3d Cir. 1983) ......................................................................................7

*Doeblers' Pa. Hybrids, Inc. v. Doebler*,
  442 F.3d 812 (3d Cir. 2006) ....................................................................................14

*E.T. Browne Drug Co. v. Cococare Prods., Inc.*,
  538 F.3d 185 (3d Cir. 2008) ....................................................................................11

*First Interstate Bancorp v. Stenquist*,
  No. C-89-4106 MHP, 1990 U.S. Dist. LEXIS 18849 (N.D. Cal. Dec. 12,
  1990) ..........................................................................................................................9

*Hanna v. United States Veterans' Admin. Hosp.*,
  514 F.2d 1092 (3d Cir. 1975) ....................................................................................8

*Health & Body Store, LLC v. Justbrand Ltd.*,
  480 Fed. App'x. 136 (3d Cir. 2012) ........................................................................11

*Koninkijke Philips Elecs. N.V. v. Hunt Control Sys.*,
  No. 11-3684, 2016 U.S. Dist. LEXIS 84299 (D.N.J June 29, 2016) .......................14

*Kos Pharms. Inc. v. Andrx Corp.*,
    369 F.3d 700 (3d Cir. 2004) .................................................................15

*Livery Coach Solutions, L.L.C. v. Music Express/East, Inc.*,
    245 F. Supp. 3d 639 (D. Del. 2017) ......................................................13

*Military Certified Residential Specialist, LLC v. Fairway Indep. Mortg. Corp.*,
    251 F. Supp. 3d 750 (D. Del. 2017) ......................................................11

*Mktg. Displays, Inc. v. TrafFix Devices, Inc.*,
    200 F.3d 929 (6th Cir. 1999), *rev'd on other grounds*, 532 U.S. 23 (2001) ...........................15

*Nespresso USA, Inc. v. Ethical Coffee Company SA, Lexmark*,
    No. 16-194-GMS, 2017 WL 3021066 (D. Del. July 14, 2017) ..............................11

*Phillips v. Cty. of Allegheny*,
    515 F.3d 224 (3d Cir. 2008) ...................................................................4

*Pinker v. Roche Holdings Ltd.*,
    292 F.3d 361 (3d Cir. 2002) ...................................................................4

*Primepoint, L.L.C. v. PrimePay, Inc.*,
    545 F. Supp. 2d 426 (D.N.J. 2008) .......................................................15

*Robinson v. Johnson*,
    313 F.3d 128 (3d Cir. 2002) ...................................................................8

*Victaulic Co. v. Tieman*,
    499 F.3d 227 (3d Cir. 2007) ...............................................................3, 7

**Statutes**

6 Del. C. § 2532(b) ..............................................................................13

6 Del. C. §§ 3313 and 2532 et seq. .........................................................2

15 U.S.C. § 1125(a)(1)(B) ....................................................................11

15 U.S.C. § 1127 .................................................................................14

**Rules**

Rule 12(b)(6) .....................................................................................3, 8

**Other**

Delaware Deceptive Trade Practices Act ..............................................11, 13

Lanham Act .................................................................................. passim

## I.      NATURE AND STAGE OF THE PROCEEDINGS

Plaintiff, Emerson Electric Co. ("Plaintiff" or "Emerson Electric"), filed the present action against Emerson Quiet Kool Co. Ltd. ("EQK") and Home Easy Ltd. ("Home Easy") (each a "Defendant," collectively, "Defendants") on December 22, 2017 alleging trademark infringement pursuant to Section 32 of the Lanham Act (15 U.S.C. § 1114); trademark infringement, unfair competition and false designation of origin, pursuant to Section 43(a)(1)(A) of the Lanham Act (15 U.S.C. § 1125(a)(1)(A)); cybersquatting under Section 43(d) of the Lanham Act (15 U.S.C. § 1125(d)); and related claims of trademark infringement, dilution, false designation of origin and unfair competition under the statutory and common law of  Delaware (6 Del. C. §§ 3313 and 2532 et seq.). (*See* D.I. 1 – Complaint, ¶¶ 3, 6).  Emerson Electric also asserts claims for breach of contract and the cancellation of United States Trademark Registration Number 4,688,893 (the "'893 Registration").  (*Id.*, ¶ 6).

On March 2, 2018, Defendants moved to dismiss Plaintiff's Complaint in its entirety for allegedly failing to state a claim upon which relief can be granted.  (D.I. 11).  This is Plaintiff's answering brief in opposition to Defendants' motion to dismiss.

## II.      SUMMARY OF THE ARGUMENT

In addition to their role as Defendants in the current dispute, EQK and Home Easy are also defendants in another litigation pending in the District of New Jersey concerning their unauthorized use of the EMERSON QUIET KOOL mark.[1]  (Poff Dec.[2], Ex. A).  The Motion to Dismiss pending in this case is essentially a recycled/repurposed version of the motion to dismiss Defendants filed in the New Jersey action (Poff Dec., Ex. B)—a motion that the New Jersey

---

[1] The plaintiff in that litigation is Emerson Radio Corporation.

[2] Filed contemporaneously with this Brief is the Declaration of Attorney Adam W. Poff. Citations to Poff's Declaration in this brief take the format ("Poff Dec.").

1

Court ***denied in its entirety***.[3]  (Poff Dec., Ex. C).  Their motion to dismiss having failed in New Jersey, EQK and Home Easy now seek to have this Court reach a different conclusion than the New Jersey Court on essentially the same facts.  This Court should deny Defendants' Motion to Dismiss for the following reasons:

- Plaintiff has presented well-pled factual allegations plausibly demonstrating that neither Defendant has any rights under a certain Consent Agreement—factual allegations that must be accepted as true at this stage.  Moreover, while Plaintiff need only present well-pled factual allegations to survive a motion to dismiss for failure to state a claim, the facts are clear that neither Defendant has any rights under the Consent Agreement.

- The affirmative defense of laches is an inappropriate ground for dismissal at this stage.  Furthermore, factual disputes between the parties concerning, *inter alia*, the timeframe applicable to a laches determination preclude dismissal of the Complaint at this stage.  Finally, laches is inapplicable here, where Plaintiff was diligent in investigating and bringing its claims.

- Plaintiff has pled sufficient facts to demonstrate standing for its unfair competition claims.  Moreover, Defendants' challenge to Plaintiff's standing for its unfair competition claims rests on inapposite law, and glaring misstatements of law.

- The Complaint properly pleads the elements of abandonment.

- EQK's alleged ownership of the '893 Registration does not insulate Defendants from liability under the Lanham Act, analogous state law claims, or claims for cyber-squatting.  Nor does EQK's alleged ownership of the '893 Registration preclude Plaintiff's claim for cancellation.

---

[3] In addition to raising the same general defense theories (e.g., authorization/consent to use the mark at issue, laches, lack of standing, failure to allege abandonment), Defendants' Memorandum of Law in Support of their Motion to Dismiss (D.I. 12) literally lifts chapter-and-verse from their failed Memorandum of Law filed in the co-pending New Jersey Action. *Compare, e.g.*, (D.I. 12, at 2) ("In short, Plaintiff fails to allege a plausible basis for any claim that EQK does not have the rights as the owner of the valuable goodwill in the EMERSON QUIET KOOL trademark . . . .") *with* (Poff Dec., Ex. B, at 2) ("In short, Plaintiff fails to allege a plausible basis for any claim that EQK does not have the rights as the owner of the valuable good will in the EMERSON QUIET KOOL trademark . . . ."). Given that the District of New Jersey and the District of Delaware both apply Third Circuit law in evaluating the sufficiency of the Complaint, it is unclear why Defendants believe their motion to dismiss, which failed in New Jersey, would be any more successful in this venue.

## III.   ARGUMENT

### A.   Defendants Do Not Have Plaintiff's Consent To Use The EMERSON QUIET KOOL Mark

Defendants' primary basis for seeking dismissal of the present action is their allegation that they "have the right to use the EMERSON QUIET KOOL mark pursuant to the Consent Agreement." (D.I. 12, at 7). As an initial matter, Defendants' "consent theory" is not a challenge to the sufficiency of the pleadings, but rather, an affirmative defense not properly resolved at the motion to dismiss stage. Further, Plaintiff has presented well-pled factual allegations plausibly demonstrating that neither Defendant has any rights under the Consent Agreement at issue (*see* Complaint, Ex. H)—factual allegations that must be accepted as true at this stage.

First, Defendants' reliance on a certain Consent Agreement (Complaint, Ex. H) to allegedly preclude liability constitutes an affirmative defense—not a challenge to the sufficiency of the pleadings. *See, e.g.*, *Beijing Tong Ren Tang (USA), Corp. v. TRT USA Corp.*, 2009 WL 5108578, at *2 (N.D. Cal. Dec. 18, 2009) (identifying authorization to use a mark at issue as an affirmative defense to a claim for trademark infringement). Typically, courts in this Circuit do not rely on an affirmative defense as a basis for dismissing a complaint under Rule 12(b)(6). *See Victaulic Co. v. Tieman*, 499 F.3d 227, 234 (3d Cir. 2007) ("[W]e will not rely on an affirmative defense . . . to trigger dismissal of a complaint under Rule 12(b)(6)") (internal citations and quotations omitted); *In re Adams Golf, Inc. Sec. Litig.*, 381 F.3d 267, 277 (3d Cir. 2004) ("[A]n affirmative defense may not be used to dismiss a plaintiff's complaint under Rule 12(b)(6)"). Thus, Defendants' "consent theory"—being an affirmative defense—does not support dismissal of the Complaint at this stage.

Second, Plaintiff has pled sufficient factual allegations—allegations that must be accepted as true at this stage—to plausibly demonstrate that neither Defendant has any rights under the Consent Agreement. *See, e.g.*, *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (noting that a court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief.") (quoting *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)) (internal quotation marks omitted). Defendants complain that Plaintiff "alleges, without any factual basis, that Defendants do not have rights under the Consent Agreement." (D.I. 12, at 6). However, contrary to Defendants' assertion, Plaintiff provides considerable factual allegations in support of its position that Defendants do not have any rights under the Consent Agreement.

By way of example and not limitation, Plaintiff's Complaint offers the following factual allegations in support of its contention that Defendants lack any rights under the Consent Agreement: (i) "Defendant Home Easy is not a party to the Consent Agreement and does not have successive or other rights thereunder" (Complaint, ¶ 38); (ii) "Defendant Emerson Quiet Kool is not a party to the Consent Agreement and does not have successive or other rights thereunder" (*Id.*, ¶ 39); (iii) "abandonment of the EMERSON QUIET KOOL mark voids the Consent Agreement" (*Id.*, ¶ 40); (iv) "[e]ven if the EMERSON QUIET KOOL mark had not been abandoned, and even if Defendants can claim the benefit of the Consent Agreement, Defendants are in breach for promoting their products in a way that leads consumers to associate Defendants with Emerson Electric or its goods and/or services" (*Id.*, ¶ 41); (v) "[e]ven if the EMERSON QUIET KOOL mark had not been abandoned, and even if Defendants can claim the benefit of the Consent Agreement, Defendants are in breach for using the EMERSON QUIET

4

KOOL mark in connection with products other than portable compact residential window and wall room air conditioning units" (*Id.*, ¶ 42); and (vi) "Defendants did not ratify the provisions of the Consent Agreement and did not expressly agree to be bound by its terms" (*Id.*, ¶ 104).  Thus, Plaintiff has pled sufficient factual allegations to support its position that Defendants lack any rights under the Consent Agreement, or have breached the terms of the Consent Agreement, and Defendants should not be heard otherwise.

Third, the evidence of record establishes that Defendants do not have any rights under the Consent Agreement.  Neither EQK nor Home Easy is a party to the Consent Agreement.  (*See* Complaint, Ex. H) (demonstrating that the Consent Agreement is between Plaintiff Emerson Electric Co. and Airwell Hong Kong Technologies Ltd. ("Airwell")).  While Defendants allege that EQK is a successor-in-interest to the EMERSON QUIET KOOL mark and the Consent Agreement, Defendants do not allege how Defendant Home Easy has purportedly obtained rights under the Consent Agreement.  (*See, e.g.*, D.I. 12, at 1) ("EQK acquired the mark and all associated goodwill from its predecessors in interest and is a proper assignee of Emerson Electric's consent.").  Thus, as Defendant Home Easy is neither a party to the Consent Agreement itself, nor a successor-in-interest to a party to the Consent Agreement, Home Easy cannot be said to have any rights under the Consent Agreement sufficient to support dismissal of the Complaint.

Furthermore, neither Defendant can be deemed an assignee of the Consent Agreement as there is no evidence that EQK and/or Home Easy ever ratified and expressly agreed to be bound by the terms of the Consent Agreement—predicates to any party becoming an assignee of the Consent Agreement.  Paragraph 8 of the Consent Agreement provides:

> Either party may license or assign its respective rights hereunder, in whole or in part, provided that such license, assignment, or other agreement does not conflict

with the provisions of this Agreement and ***provided that the parties to the same
ratify and expressly agree to be bound by the terms hereof***.

(Complaint, Ex. H, ¶ 8) (emphasis added).

Simply put, Defendants have not furnished any evidence demonstrating that EQK and/or
Home Easy have ratified and expressly agreed to be bound by the terms of the Consent
Agreement.  Absent such evidence, neither Defendant can constitute an assignee of the Consent
Agreement.

In addition, Plaintiff has presented factual allegations plausibly demonstrating
abandonment of the EMERSON QUIET KOOL mark, so as to void the Consent Agreement.
(*See, e.g.*, Complaint, ¶¶ 40, 105, 111).  A voided Consent Agreement cannot shield Defendants
from liability.

Further still, even if one or both of the Defendants could be considered a successor-in-
interest/assignee to the Consent Agreement, the Defendant(s) would nonetheless be in breach of
such Agreement for failure to ratify and expressly agree to be bound thereunder.  Defendant(s)
would additionally be in breach of Paragraph 6 of the Consent Agreement, which prohibits the
"promot[ion], advertis[ing], or distribut[ion] [of] its respective goods and/or services in any way
that would lead consumers to associate it with the other party or its goods and/or services."  (*See*
Complaint, Ex. H, ¶ 6).  The Consent Agreement reflects Plaintiff Emerson Electric's limited
consent for Airwell to use the EMERSON QUIET KOOL mark solely in connection with
"portable compact residential window and wall room air conditioning unit."  (*See id.*, ¶ 1).  It
offers no cover for EQK and/or Home Easy to use the EMERSON QUIET KOOL mark in
connection with products outside of the enumerated goods, such as dehumidifiers.[4]  Because

---

[4] Defendants contend that Plaintiff has not even alleged that Defendants are selling products
other than "portable compact residential window and wall room air conditioning unit[s]."  (*See,
e.g.*, D.I. 12, at 8) ("Plaintiff has alleged no plausible fact that Defendants are selling anything

Defendants are using the EMERSON QUIET KOOL mark in connection with products other than "portable compact residential window and wall room air conditioning unit[s]" (e.g., dehumidifiers) in a manner that "would lead consumers to associate it with [Emerson Electric] or its goods and/or services," (Complaint, Ex. H, ¶ 6), Defendants are in breach of the Consent Agreement to the extent they have any rights thereunder.

In light of the foregoing, the Consent Agreement (D.I. 1, Ex. H) provides no basis for dismissing the Complaint at this early, pre-discovery, stage of the proceedings.

### B.     Plaintiff's Claims Are Not Barred By The Doctrine of Laches

Defendants further contend that "Plaintiff's Lanham Act claims[5] are barred by the doctrine of laches."  (D.I. 12, at 8).  As with Plaintiff's "consent theory" addressed above, laches is an affirmative defense that should not supply a basis for dismissal at this stage.  *See Victaulic Co.*, 499 F.3d at 234; *In re Adams Golf, Inc. Sec. Litig.*, 381 F.3d at 277.  Moreover, laches cannot supply a basis for dismissal of Plaintiff's Lanham Act claims where, as here, there is a myriad of factual disputes between the parties affecting whether the doctrine of laches applies. *See, e.g.*, *Compagnie Des Bauxites de Guinee v. L'Union Atlantique S.A. D'Assurances*, 723 F.2d 357, 363 (3d Cir. 1983) ("We are compelled to reverse the district court's holding that [Plaintiff's] suit was not timely filed because disputed issues of fact as well as undecided

---

other than 'portably compact residential window and wall room air conditioning units.'"). Defendants are simply wrong.  Plaintiff has clearly and unequivocally alleged that Defendants are selling, for example, dehumidifiers, which are not "portably compact residential window and wall room air conditioning units."  (*See, e.g.*, D.I. 1, ¶¶ 5, 22, 28, 61, 77, etc.).  Moreover, attached as Exhibit I to the Complaint is a screenshot of a webpage from the site https://www.hayneedle.com showing, for sale, one of Defendants' dehumidifiers bearing the EMERSON QUIET KOOL mark.  (D.I. 1, Ex. I).

[5] Plaintiff notes that Defendants' laches challenge is only presented with regard to Plaintiff's Lanham Act claims, and does not appear to apply to other, non-Lanham Act claims set forth in the Complaint.  Plaintiff reserves the right to address any laches challenges to non-Lanham Acts claims, should Defendants present any such challenges.

questions of law prevent a dismissal on this ground, at least at this time.").

Defendants rely on *Hanna v. United States Veterans' Admin. Hosp.*, 514 F.2d 1092, 1094 (3d Cir. 1975) for the proposition that "[a] laches defense may be raised by a Rule 12(b)(6) motion when 'the time alleged in the statement of the claim shows that the cause of action has not been brought within the statute of limitations.'" (D.I. 12, at 9) (quoting *Hanna*, 514 F.2d at 1094). However, Defendants conveniently fail to mention how *Hanna* was decided; namely, with the Third Circuit reversing the district court's dismissal for failure to satisfy the statute of limitations due to "a genuine fact issue as to the time at which the statute of limitations commenced running." *Id.*, at 1093.

Similarly, here, there are a multitude of factual disputes between the parties impacting whether the doctrine of laches applies to bar Plaintiff's Lanham Act claims. *See, e.g.*, *Robinson v. Johnson*, 313 F.3d 128, 135 (3d Cir. 2002) ("If the [statutory] bar is not apparent on the face of the complaint, then it may not afford the basis for a dismissal of the complaint under Rule 12(b)(6).") (quoting *Bethel v. Jendoco Constr. Corp.*, 570 F.2d 1168, 1174 (3d Cir. 1978)). For example, and like the *Hanna* case, the parties to the instant dispute disagree over *when* the statute of limitations commenced running. Plaintiff, on one hand, believes the statute of limitations commenced running, at the earliest, in May 2017 when the EMERSON QUIET KOOL mark re-launched in connection with Defendant EQK's products. (Complaint, ¶¶ 30) ("[T]he Emerson Quiet Kool Goods launched under the EMERSON QUIET KOOL mark in or about May 2017."); (*id.*, ¶ 37) ("[T]he actual date of first use in commerce of the mark shown in the '893 Registration was not until May 2017 . . . [and] the Emerson Quiet Kool brand was inactive for many consecutive years preceding Emerson Quiet Kool's 2017 launch."). Defendants, on the other hand, contend that Plaintiff "was obligated to bring this claim at least thirty years ago."

(D.I. 12, at 8).

While the foregoing factual dispute between the parties, in and of itself, is sufficient to preclude dismissal on laches grounds, the parties also disagree over many other facts central to any laches defense including, for example, whether the EMERSON QUIET KOOL mark was abandoned.  *Compare* (Complaint, ¶ 111) ("The [EMERSON QUIET KOOL] mark has been abandoned due to nonuse with intent not to resume use.") *with* (D.I. 12, at 12) (labeling Plaintiff's contention that the EMERSON QUIET KOOL mark had been abandoned a "faulty assumption").  Whether or not the EMERSON QUIET KOOL mark was abandoned is crucial to any laches defense where "renewed use of the name after the abandonment of rights constitutes a new infringement of plaintiff's rights" that precludes a laches defense based on the prior use. *First Interstate Bancorp v. Stenquist*, No. C-89-4106 MHP, 1990 U.S. Dist. LEXIS 18849, at *8–9 (N.D. Cal. Dec. 12, 1990).

Furthermore, Plaintiff was not dilatory in bringing its Lanham Act claims.  As pled in the Complaint, "the actual date of first use in commerce of the mark shown in the '893 Registration was not until May 2017."  (Complaint, ¶ 37).  "After sufficient investigation, Emerson Electric sent a cease and desist letter to Emerson Quiet Kool on July 10, 2017 demanding that Emerson Quiet Kool stop its infringing use of the EMERSON QUIET KOOL mark by July 18, 2017." (*Id.*, ¶ 48).  Finally, Plaintiff brought the instant action on December 22, 2017.  (*Id.*) (showing filing date of December 22, 2017).  Thus, Plaintiff brought the instant suit within eight months of Defendants' infringing use of the EMERSON QUIET KOOL mark in commerce—well within the timeframe prescribed by the Delaware statute of limitations.

Finally, to the extent that the Court considers Defendants' statement that "EQK resumed production of products identified by the EMERSON QUIET KOOL mark by 2012" (D.I. 12, at

10) in assessing the applicability of laches, Plaintiff notes that the evidence Defendant relies

upon does not support a finding that the EMERSON QUIET KOOL was not abandoned.

Defendants cite to the Declaration of Isaac Xiao ("Xiao Declaration") at paragraph 6 as allegedly

rebutting Plaintiff's contention that the EMERSON QUIET KOOL mark shown in the '893

Registration was not used in commerce until May 2017.  Paragraph 6 of the Xiao Declaration

provides as follows:

> In 2012, Midea began to design and make Emerson Quiet Kool Brand products,
> including window air conditioners and portable air conditioners. These Emerson
> Quiet Kool products were sold to large accounts, like Brandsmart in Florida. See
> **Exhibit 1** for the air conditioner designed and made by Midea for Emerson Quiet
> Kool in 2012.

(D.I. 13, ¶ 6) (emphasis in original).

However, consultation of Exhibit 1 to the Xiao Declaration immediately reveals that it

fails to demonstrate any use of the EMERSON QUIET KOOL mark in commerce during the

2012 timeframe.  Rather, Exhibit 1 merely shows various air conditioner models bearing the

EMERSON QUIET KOOL mark. (D.I. 13-1, at 1–2).  Critically, Exhibit 1 to the Xiao

Declaration is devoid of any date, lacks pricing information, and flatly fails to indicate that the

EMERSON QUIET KOOL mark was actually used in commerce during the relevant timeframe.

(*Id.*).

For the foregoing reasons, laches provides no basis for dismissing the Complaint at this

stage of the proceedings.

### C.     Plaintiff Has Standing To Bring Its Unfair Competition Claims

Defendants argue that "Plaintiff's claims for trademark infringement, false designation of

origin and false advertising[6] fail because Emerson Electric is not a competitor and, therefore,

---

[6] The Complaint does not include a count for false advertising.  (*See, e.g.*, Complaint, ¶ 62)
("Defendants' acts constitute trademark infringement, false designation of origin, and unfair

lacks standing." (D.I. 12, at 10). At the outset, Plaintiff notes that all of the authority on which Defendants rely in support of their standing challenge relates to ***standing for a claim of false advertising***—a claim not present in the instant suit. (*See* D.I. 12, at 11) (presenting the standing requirements for a false advertising claim as set forth in *Nespresso USA, Inc. v. Ethical Coffee Company SA, Lexmark*, No. 16-194-GMS, 2017 WL 3021066, at *3 (D. Del. July 14, 2017)). Thus, Defendants protestations regarding standing—which do not analyze standing through the proper lens—should be ignored. Nonetheless, Plaintiff plainly has standing to pursue its Lanham Act claims for trademark infringement, unfair competition and false designation of origin, as well as standing to pursue its related state law claims.

To be successful on a trademark infringement or unfair competition claim under the Lanham Act, Plaintiff must prove that: "(1) the mark [it seeks to protect] is valid and legally protectable, (2) [the plaintiff] owns the mark, and (3) the defendant's use of the mark is likely to create confusion concerning the origin of goods or services associated with the mark." *Health & Body Store, LLC v. Justbrand Ltd.*, 480 Fed. App'x. 136, 145 n.15 (3d Cir. 2012) (quoting *E.T. Browne Drug Co. v. Cococare Prods., Inc.*, 538 F.3d 185, 191 (3d Cir. 2008)) (internal quotations omitted); *see also A & H Sportswear, Inc. v. Victoria's Secret Stores, Inc.*, 237 F.3d 198, 210 (3d Cir. 2000) ("We measure federal trademark infringement, 15 U.S.C. § 1114, and federal unfair competition, 15 U.S.C. § 1125(a)(1)(A), by identical standards."). The pleading standards are the same for trademark infringement and unfair competition claims under state and federal law. *See, e.g.*, *Military Certified Residential Specialist, LLC v. Fairway Indep. Mortg. Corp.*, 251 F. Supp. 3d 750, 757 (D. Del. 2017) ("Courts reviewing [Delaware Deceptive Trade

---

competition in violation of Lanham Act § 43(a)(1)(A), 15 U.S.C. § 1125(a)(1)(A)."). However, Plaintiff reserves the right to bring an Amended Complaint adding a count for, *inter alia*, false advertising under 15 U.S.C. § 1125(a)(1)(B), should facts uncovered during discovery support such a claim.

Practices Act] violations apply the same standards as they apply to trademark infringement claims (i.e., valid and protectable mark, plaintiff owns mark, and likelihood of confusion)").

Here, Plaintiff has sufficiently pled its claims for trademark infringement and unfair competition. First, the Complaint alleges Plaintiff has sold goods and appliances using the EMERSON mark for over 127 years. (Complaint, ¶ 5, 7–8). Indeed, Plaintiff is the owner of a plethora of federally registered trademarks for the EMERSON mark, with at least one registration dating as far back as 1916. (*See, e.g.*, *id.*, at 8) (referencing, for example, U.S. Trademark Registration No. 0,111,931 for a stylized version of the EMERSON mark, registered August 15, 1916). Second, the EMERSON marks are owned by Plaintiff Emerson Electric as evident through the many U.S. trademark registrations attached to the Complaint. (*See id.*, Ex. A). Third, the Complaint alleges that Defendants have wrongly used the Emerson Electric marks to market their air conditioners and dehumidifiers, which has caused, and is likely to cause, consumer confusion. (*Id.*, ¶¶ 6, 43–46, 52, 55, 61, 91, 93, 115). Specifically, the Complaint alleges, among other things, that "The https://www.hayneedle.com webpages from which Emerson Quiet Kool Goods are available for purchase, picture Plaintiff's EMERSON house mark prominently, followed by a discussion of Plaintiff and its history and a hyperlink to genuine Plaintiff product offered on the site," (*id.*, ¶ 44) and "Defendants' actions have created confusion in the marketplace as consumers and other industry stakeholders are associating the Emerson Quiet Kool Goods with Emerson Electric . . . [which] has harmed, and will continue to harm, Emerson Electric's goodwill in the EMERSON Marks and its business reputation." (*Id.*, ¶ 45). Further, Plaintiff alleges that consumer confusion has already occurred in the marketplace. (*Id.*, ¶ 43). Thus, Plaintiff has sufficiently pled its claims for trademark infringement and unfair competition under both federal and state law.

Having already demonstrated standing to bring its trademark infringement and unfair competition claims, Plaintiff takes this limited opportunity to correct Defendants' glaring misstatements of law concerning claims for unfair competition brought under the Delaware Deceptive Trade Practices Act, 6 Del. C. § 2532.  Defendants posit that "under Delaware law, direct competition is a prerequisite for standing," citing *Livery Coach Solutions, L.L.C. v. Music Express/East, Inc.*, 245 F. Supp. 3d 639, 648–49 (D. Del. 2017).  (D.I. 12, at 12).  However, neither the statute itself, nor *Livery Coach*, support Defendants' proposition.

First, the statute is plain on its face that direct competition is expressly ***not*** a precondition for standing under 6 Del. C. § 2532.  It reads: "In order to prevail in an action under this chapter, a complainant ***need not prove competition*** between the parties or actual confusion or misunderstanding."  6 Del. C. § 2532(b) (emphasis added).  Second, *Livery Coach* merely stands for the proposition that a horizontal business relationship must exist between the parties to confer standing under 6 Del. C. § 2532, which horizontal business relationship may be demonstrated in a variety of ways, of which direct competition is but one.  *Livery Coach*, 245 F. Supp. 3d at 648 (noting that "a horizontal business relationship is one that 'exists between at least two businesses on the same market level, because they manufacture similar products in the same geographic region, or are direct competitors.'") (quoting *Chase Bank USA, N.A. v. Hess*, 2013 U.S. Dist. LEXIS 32710, 2013 WL 867542, at *5 (D. Del. Mar. 7, 2013)).

Here, Plaintiff and Defendants manufacture similar products.  Defendants' air conditioners and dehumidifiers are related to Plaintiff's "products that play a significant role in the temperature, humidity level and overall comfort of the home, such as air circulators, fans, air conditioning compressors, HVAC controls, humidifiers, humidifying products and thermostats." (Complaint, ¶ 7).  Accordingly, even if it is determined that Plaintiff and Defendants are not

direct competitors (a contention that Plaintiff would dispute), Plaintiff nonetheless has standing based on, at a minimum, being on the same market level and manufacturing similar products as Defendants.

For the reasons set forth above, Defendants' naked challenges to standing should be rejected.

### D.   Plaintiff Has Properly Pled the Elements of Abandonment

Defendants maintain that Plaintiff "fails to make out a plausible claim for abandonment." (D.I. 12, at 12).  Plaintiff has asserted a *prima facie* case for abandonment, and Defendants' statements to the contrary ring hollow.

"[T]o adequately plead a claim for abandonment, a party must show either (1) at least three consecutive years of nonuse of a trademark, or (2) a period of nonuse of less than three years combined with proof of intent to not resume use." *Koninkijke Philips Elecs. N.V. v. Hunt Control Sys.*, No. 11-3684, 2016 U.S. Dist. LEXIS 84299, at *31 (D.N.J June 29, 2016) (citing 15 U.S.C. § 1127); *see also Doeblers' Pa. Hybrids, Inc. v. Doebler*, 442 F.3d 812, 823-4 (3d Cir. 2006) (setting forth the standard for showing abandonment, and finding that the issue of abandonment was fact intensive and not appropriate for resolution on summary judgment). Here, the Complaint states that "[t]he mark of the '893 Registration [i.e., the EMERSON QUIET KOOL mark] has been abandoned due to nonuse with intent not to resume use[7]." (Complaint, ¶ 111).  In support of its position that the '893 Registration has been abandoned, the Complaint states, among other things, that "the Emerson Quiet Kool brand was inactive for many

---

[7] Defendants assert that "Plaintiff fails to allege any intent to abandon . . . ."  (D.I. 12, at 12). Given that paragraph 111 of Plaintiff's complaint indisputably *does* allege intent to abandon, it appears that Defendants' protestation is merely an inadvertent remnant from its failed motion to dismiss filed in the contemporaneous New Jersey Action.  *Compare* (D.I. 12, at 12) ("Plaintiff fails to allege any intent to abandon, and the public record demonstrates the opposite . . . .") *with* (Poff Dec., Ex. B, at 17) ("Plaintiff fails to allege any intent to abandon, and the public record demonstrates the opposite . . . .").

consecutive years preceding Emerson Quiet Kool's 2017 launch." (Complaint, ¶ 37).  Thus, Plaintiff has properly pled abandonment.

### E.   Defendants' Ownership Of The '893 Registration Does Not Preclude Plaintiff's Claims

Defendants contend that all of Plaintiff's claims must fail because "EQK is the lawful owner since 1983 of the EMERSON QUIET KOOL mark."[8]  (D.I. 12, at 14).  As an initial matter, EQK's purported ownership of a mark does not insulate Defendants from liability under the Lanham Act or analogous state law claims.  Liability arises when use of a mark causes consumer confusion—irrespective of a defendant's ownership (or even federal registration) of the mark in question.  *See, e.g.*, *Mktg. Displays, Inc. v. TrafFix Devices, Inc.*, 200 F.3d 929, 934 (6th Cir. 1999), *rev'd on other grounds*, 532 U.S. 23 (2001) (cited in *Kos Pharms. Inc. v. Andrx Corp.*, 369 F.3d 700, 715 (3d Cir. 2004)).  Indeed, trademark disputes regularly involve two owners of federally registered marks who allege confusion based on the other's use.  *See, e.g., Primepoint, L.L.C. v. PrimePay, Inc.*, 545 F. Supp. 2d 426 (D.N.J. 2008); *Barre-Nat'l, Inc. v. Barr Labs., Inc.*, 773 F. Supp. 735 (D.N.J. 1991).  Defendants' argument is, therefore, without merit.  Both the District Court and USPTO are authorized to cancel a trademark registration for this very reason.  Put simply, ownership of a federally-registered mark does not provide unfettered rights to use that mark in commerce.

Additionally, Defendants' own evidence contradicts its claim that "EQK is the lawful owner since 1983 of the EMERSON QUIET KOOL mark." (D.I. 12, at 14).  Exhibit F to Defendants' Motion to Dismiss shows that the execution date of the assignment to Defendant EQK of the '893 Registration is January 10, 2017. (D.I. 12-1, at 5) (indicating an execution date

---

[8] While mere ownership of the EMERSON QUIET COOL mark does not shield EQK from liability for the reasons discussed in this section, EQK's ownership of the EMERSON QUIET COOL mark certainly cannot shield co-defendant Home Easy, which is also a party to this dispute.

of January 10, 2017 for an assignment of the '893 Registration from American Ductless AC Corp. to Emerson Quiet Kool Co, Ltd., LLC).

Defendants' challenge to Plaintiff's cyber-squatting claim is equally meritless. "To establish a claim of cybersquatting, a plaintiff must show: (1) that a defendant registered, traffics in, or uses a domain name that is identical or confusingly similar to a distinctive or famous trademark and (2) that the defendant has a bad faith intent to profit from that mark." *ARGOS v. Orthotec LLC*, 304 F. Supp. 2d 591, fn3 (D. Del. 2004). Defendants attack the sufficiency of Plaintiff's cyber-squatting claim by alleging that Plaintiff fails to plead "bad faith intent to profit from another's mark." (D.I. 12, at 14) ("Plaintiff fails to allege properly the elements of a claim under 15 § U.S.C. 1125(d) (bad faith intent to profit from another's mark.)"). However, in direct contradiction (yet again) to Defendants' assertion, the Complaint indisputably states "Defendants registered the Infringing Domain Name ***with the bad faith intent to profit from the goodwill Emerson Electric*** has developed in the EMERSON Marks." (Complaint, ¶ 81) (emphasis added). Thus, Defendants' challenge to the sufficiency of Plaintiff's cyber-squatting count is simply without merit. Moreover, Plaintiff has properly pled the remaining elements of its cyber-squatting claim. (*See* Complaint, ¶¶ 76–86).

## IV.    CONCLUSION

For the foregoing reasons, Plaintiff Emerson Electric respectfully requests that the Court deny Defendants' Motion to Dismiss the Complaint in its entirety.

March 16, 2018                                      YOUNG CONAWAY STARGATT
                                                       & TAYLOR, LLP

                                                   */s/ Adam W. Poff*
                                                   Adam W. Poff (No. 3990)
                                                   Robert M. Vrana (No. 5666)
                                                   Rodney Square
                                                   1000 North King Street
                                                   Wilmington, DE  19801
                                                   302-571-6600
                                                   apoff@ycst.com
                                                   rvrana@ycst.com

                                                   HARNESS, DICKEY & PIERCE, PLC
                                                   Michael P. Brennan, *Of Counsel*
                                                   George D. Moustakas, *Of Counsel*
                                                   Lisa M. DuRoss, *Of Counsel*
                                                   5445 Corporate Drive, Suite 200
                                                   Troy, MI  48098
                                                   248-641-1600
                                                   mbrennan@hdp.com
                                                   gdmoustakas@hdp.com
                                                   lduross@hdp.com

                                                   *Attorneys for Plaintiff Emerson Electric Co.*

01:22993929.1

17

## CERTIFICATE OF SERVICE

I, Adam W. Poff, hereby certify that on March 16, 2018, I caused to be electronically filed a true and correct copy of the foregoing document with the Clerk of the Court using CM/ECF, which will send notification that such filing is available for viewing and downloading to registered participants.

I further certify that on March 16, 2018, I caused the foregoing document to be served by e-mail on the following counsel of record:

>Philip A. Rovner
>Jonathan A. Choa
>Alan R. Silverstein
>POTTER ANDERSON & CORROON LLP
>Hercules Plaza
>Wilmington, DE 19899
>provner@potteranderson.com
>jchoa@potteranderson.com
>asilverstein@potteranderson.com
>
>*Attorneys for Defendants*

YOUNG CONAWAY STARGATT & TAYLOR, LLP

*/s/Adam W. Poff*_____
Adam W. Poff (No. 3990)
Robert M. Vrana (No. 5666)
Rodney Square
1000 North King Street
Wilmington, Delaware  19801
(302) 571-6600
*apoff@ycst.com*
*rvrana@ycst.com*

*Attorneys for Plaintiff*
*Emerson Electric Co.*

Dated: March 16, 2018

01:22799260.1