# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| EMERSON ELECTRIC CO., ) | |
| ) | |
| Plaintiff, ) | |
| ) | C.A. No. 17-1846-LPS |
| v. ) | |
| ) | |
| EMERSON QUIET KOOL CO. LTD., and ) | |
| HOME EASY LTD., ) | |
| ) | |
| Defendants. ) | |

## DEFENDANTS' REPLY BRIEF IN SUPPORT OF THEIR MOTION TO DISMISS

Philip A. Rovner (# 3215)
Jonathan A. Choa (#5319)
Alan R. Silverstein (#5066)
POTTER ANDERSON CORROON LLP
Hercules Plaza
P.O. Box 951
Wilmington, DE 19899
(302) 984-6000
provner@potteranderson.com
jchoa@potteranderson.com
asilverstein@potteranderson.com

Dated: March 23, 2018          *Attorneys for Defendants*

**TABLE OF CONTENTS**

SUMMARY OF ARGUMENT………………………………………………………………...1

ARGUMENT…………………………………………………………………………………...2

    I.      The New Jersey Court's Decision Is Not Precedent Nor Is It Even Persuasive…..2

    II.     The Consent Agreement Is Properly Raised on a Motion to Dismiss…………….4

    III.    Emerson Electric Does Not Meaningfully Dispute the Factual Evidence
           Supporting Laches……………………………………………………………...7

    IV.    The Unfair Competition Claim Fails Because Emerson Electric Does
           Not Have a Horizontal Business Relationship with Defendants………………….8

    V.      The Cybersquatting Claim Cannot Be Saved By An Unsupported Allegation…...9

    VI.    The Abandonment Claim Also Must Fail For Lack Of Factual Support…………9

CONCLUSION…………………………………………………………………………..10

# **TABLE OF AUTHORITIES**

**CASES**

                                                                                **Page(s)**

*Ahmed v. Hosting.com*,
   28 F. Supp. 3d 82, 91 (2014) ...................................................................................................8

*Air Prod. & Chemicals, Inc. v. Reichhold Chemicals, Inc.*,
   755 F.2d 1559 (Fed. Cir. 1985) ...............................................................................................4

*Carborundum Co. v. Molten Metal Equip. Innovations*,
   72 F.3d 872 (Fed. Cir. 1995) ...................................................................................................4

*Jim Arnold Corp. v. Hydrotech Sys., Inc.*,
   109 F.3d 1567 (Fed. Cir. 1997) ...............................................................................................4

*Koninkijke Philips Elecs. N.V. v. Hunt Control Sys., Inc.*,
   C.A. No. 11-3684, 2016 WL 3545529 (D.N.J. June 29, 2016) ................................................9

*Lexmark Int'l v. Static Control Components, Inc.*,
   134 S. Ct. 1377 (2014) .............................................................................................................8

*Livery Coach, L.L.C. v. Music Express/East, Inc.*,
   245 F. Supp. 3d 639 (D. Del. 2017) .........................................................................................8

*Premier Dental Prod. Co. v. Darby Dental Supply Co.*,
   794 F.2d 850 (3d Cir. 1986) .....................................................................................................7

*Princeton Digital Image Corp. v. Office Depot Inc.*,
   C.A. No. 13-239, 2016 WL 1533697 (D. Del. Mar. 31, 2016) ................................................5

*UHS of Delaware, Inc. v. United Health Services, Inc.*,
   227 F. Supp. 3d 381, 403 (M.D. Pa. 2016) ..............................................................................8

**STATUTES**

                                                                                **Page(s)**

6 DEL. C. § 2532 ........................................................................................................................8

15 U.S.C. § 1125(a) ...................................................................................................................8

15 U.S.C. § 1125(d)(1)(B) .........................................................................................................9

Anticybersquatting Consumer Protection Act ...........................................................................9

Defendants Emerson Quiet Kool Co. Ltd. ("EQK") and Home Easy Ltd. ("Home Easy") (collectively "Defendants") respectfully submit this Reply Brief in support of their motion to dismiss the Complaint in its entirety.

## SUMMARY OF ARGUMENT

Plaintiff Emerson Electric Co.'s ("Emerson Electric") opposition to the motion to dismiss fails to explain away the deficiencies in its Complaint (D.I. 1, the "Complaint"). Instead, Emerson Electric asks the Court to ignore the Consent Agreement, ignore the delay in filing suit, and ignore the decades-long coexistence of three separate Emerson-branded entities.

First, the New Jersey opinion that Emerson Electric suggests controls this Court's decision is of little relevance here because, *inter alia*, there was no consent agreement between the parties in the New Jersey Action.[1] The parties in New Jersey also shared a more complicated history than the parties here. Finally, the New Jersey decision was based on a complaint with a more substantially developed set of facts than the Complaint here.

Second, in the Consent Agreement, Emerson Electric granted EQK's predecessor in interest the right to register the EMERSON QUIET KOOL mark and represented that the mark would not cause confusion with Emerson Electric's own marks. Emerson Electric presents no facts to ignore the Consent Agreement. Instead, it offers only speculation, which is insufficient to overcome a motion to dismiss.

Third, as to the laches issue, Emerson Electric only states, without any support, that the first applicable use in commerce of the EMERSON QUIET KOOL mark took place in May 2017. But, again, Emerson Electric offers no facts to support that allegation. In contrast, a

---

[1] The plaintiff in the New Jersey Action, Emerson Radio, Inc. is not related to the plaintiff here, Emerson Electric.

declaration concerning a third-party's activities using the mark shows that Emerson Electric waited far too long to assert its claims.

Fourth, Emerson Electric's unfair competition claim cannot survive because Emerson Electric and Defendants do not compete on the same market level with similar products.

Fifth, as to the cybersquatting and abandonment claims, Emerson Electric set forth no factual support that would allow those claims to proceed. [2]

## ARGUMENT

### I. The New Jersey Court's Decision Is Not Precedent Nor Is It Even Persuasive

Emerson Electric incorrectly claims that a decision dismissing this action would somehow be inconsistent with the decision denying a motion to dismiss in the New Jersey Action. Emerson Electric, however, conveniently ignores that the plaintiff in the New Jersey action did not sign a consent agreement for registration and use of the EMERSON QUIET KOOL mark like Emerson Electric did here.

First, in the New Jersey Action, the defendants "[sought] dismissal of Plaintiff's claims based on a 1983 assignment" with Emerson Radio. The Consent Agreement at issue in this case, between Defendants and Emerson *Electric*, was, unsurprisingly, never raised in the New Jersey Action. *See Emerson Radio Corp. v. Emerson Quiet Kool Co. Ltd.*, No. 2:17-cv-05358-SDW-LDW, Opinion at 4 (D.N.J. March 6, 2017.[3]

---

[2] Emerson Electric's brief appears to separate EQK and Home Easy for each of the claims in an attempt to preserve a claim against at least one Defendant. *See* Opp. Br. at 5 ("Defendants do not allege how Home Easy has purportedly obtained rights under the Consent Agreement."). This argument is a red herring. Home Easy distributes products for EQK. Home Easy cannot be vicariously liable for acts done at the request of EQK if EQK is not liable. Accordingly, for purposes of the motion to dismiss, there is no distinction between Home Easy and EQK.
[3] In addition to ignoring the substantive differences, Emerson Electric's rhetoric regarding "why Defendants believe their motion to dismiss" can succeed in view of the New Jersey court's decision ignores that the New Jersey court's decision was issued on March 6, 2018, four days after Defendants filed their motion to dismiss in this case.

2

The Consent Agreement (Ex. H to the Complaint) is much more probative here than the assignment was in the New Jersey Action. The Consent Agreement states "The parties do not anticipate any confusion arising from the concurrent use of their respective marks or in connection with their respective goods and/or services as provided by this Agreement" and "[t]he [EMERSON QUIET KOOL] Mark and the Emerson Marks are, or can be made to be, sufficiently different in their entireties…such that there is no likelihood of confusion." Ex. H to Complaint at ¶¶ 4 and 5.a. The assignment in the New Jersey Action makes no such representations. Indeed, it says nothing about the marks other than assigning all right, title, interest and goodwill from a third party to defendants. Ex. A. The New Jersey Court also pointed out that plaintiff in that case did not assign any rights to defendants. Here, Defendants' right to use the EMERSON QUIET KOOL mark come directly from Plaintiff. Accordingly, the New Jersey court's analysis is irrelevant here.

Second, the plaintiff in New Jersey provided much more factual support for its allegations than Emerson Electric did here. The New Jersey complaint has 178 paragraphs of allegations and includes screen captures of the Emerson Quiet Kool website allegedly depicting use of the New Jersey plaintiffs' mark, EMERSON RADIO. *See* D.I. 17-1, Ex. A at ¶¶ 45-46. While the New Jersey plaintiff may have raised sufficient facts to support its claims, Emerson Electric has not done so here.

Simply put, while some facts of course overlap, the decision of the New Jersey court concerned a different, unrelated plaintiff and was based on a substantively different set of allegations. Therefore, the decision of the New Jersey court has no weight here.

## II. The Consent Agreement Is Properly Raised on a Motion to Dismiss

The Consent Agreement (Exhibit H to the Complaint), and the subsequent assignments of the '893 Registration, give EQK the right to use the EMERSON QUIET KOOL mark and defeat Emerson Electric's claims by their very terms.[4] Emerson Electric argues that the Consent Agreement can only be raised as an affirmative defense, which would likely result in lengthy and expensive discovery all to prove what the Court can determine now because the Consent Agreement is plain on its face and contains clear representations with an express grant of certain rights.

In the analogous situation of a license defense to claims of patent infringement, courts have recognized that the license defense is often best resolved before any of the substantive issues. *Air Prod. & Chemicals, Inc. v. Reichhold Chemicals, Inc.*, 755 F.2d 1559, 1563 (Fed. Cir. 1985) ("We recognize that in cases where a license is plead as a defense, or where the license defense is anticipated in the complaint, that the most expeditious conduct of the trial would necessitate that the license issue be resolved first, for if the license issue is resolved in the defendant's favor the infringement issue is mooted."); *Jim Arnold Corp. v. Hydrotech Sys., Inc.*, 109 F.3d 1567, 1577 (Fed. Cir. 1997) ("license issue [should] be resolved first, for if the license issue is resolved in the defendant's favor the infringement issue is mooted"); *see also generally Carborundum Co. v. Molten Metal Equip. Innovations*, 72 F.3d 872, 878 (Fed. Cir. 1995) (a

---

[4] The relevant assignments are attached hereto as Exhibits B through F. Exhibit B shows the assignment of the predecessor Registrations 1,119,176 (air conditioners) and 1,612,846 (dehumidifiers) for EMERSON QUIET KOOL from Fedders North America Inc. to Airwell Hong Kong Technologies Limited, dated July 7, 2008. Exhibit C shows the name change from Airwell Hong Kong Technologies Limited to Fedders Hong Kong Company Limited, dated June 1, 2011. Exhibit D shows the assignment of the two EMERSON QUIET KOOL registrations and pending application 77/946,976 which eventually registered as the '893 Registration from Fedders Hong Kong Company Limited to Elco Holland B.V, dated March 14, 2012. Exhibit E shows the assignment of pending application 77/946,976 to American Ductless AC Corp., dated August 12, 2014. Finally, Exhibit F shows the assignment of the '893 Registration to Defendant EQK, dated January 10, 2017.

4

license "is a defense to patent infringement"); *Princeton Digital Image Corp. v. Office Depot Inc.*, C.A. No. 13-239, 2016 WL 1533697, at *12 (D. Del. Mar. 31, 2016) (collecting cases) (recognizing the "significant impact meritorious license defenses can have on patent litigation"). Here, Emerson Electric attached the Consent Agreement to the Complaint and the Consent Agreement alone resolves most, if not all, of the claims at issue.

First, the Consent Agreement shows that, by Emerson Electric's agreement, the two marks coexist without confusion: "The parties do not anticipate any confusion arising from the concurrent use of their respective marks or in connection with their respective goods and/or services as provided by this Agreement." Ex. H to the Complaint at ¶ 4. Emerson Electric never alleged that the appearance or commercial impression of the EMERSON QUIET KOOL mark has changed since the Consent Agreement. *See Id.* at ¶ 5.a. Nor does Emerson Electric allege that the respective goods and services at issue are any less distinct or any more likely to be confused. *See Id.* at ¶ 5.b. Simply put, Emerson Electric is unhappy with the Consent Agreement—which Airwell, its successors in interest and, ultimately, EQK relied on—and is now trying to walk away from its obligations. But Emerson Electric offers no facts to support a finding that Defendants' use is not covered by the Consent Agreement. Instead, Emerson Electric offers only speculation, which is insufficient to overcome a motion to dismiss.

Second, to the extent Emerson Electric alleges that sales of dehumidifiers are outside any representation of the Consent Agreement, the Complaint never identifies a single dehumidifier product sold by Defendants or any example of consumer confusion. Indeed, the Complaint contains no facts showing that dehumidifiers sold under the EMERSON QUIET KOOL mark "would lead consumers to associate it with Emerson Electric." Opp. Br. at 7.

Moreover, an earlier consent agreement executed in 2009 ("2009 Consent Agreement," Ex. G to the Complaint), whose terms were not superseded by the 2011 Consent Agreement,[5] specifically recognized Airwell's interest in using the EMERSON QUIET KOOL mark for dehumidifiers.  Ex. G to the Complaint at ¶ 2 ("Airwell owns U.S. Registration No. 1,119,176 for EMERSON QUIET KOOL covering 'air conditioning units' and U.S. Trademark Registration No. 1,612,846 for EMERSON QUIET KOOL covering 'dehumidifies.'").[6]  The 2009 Consent Agreement makes virtually the same statement as the 2011 Consent Agreement: "The Airwell Marks and the Emerson Marks are, or can be made to be, sufficiently different in their entireties as to appearance and commercial impression, when taken with the differences between the distinct goods and/or services, to prevent likelihood of confusion."  *Id*. at ¶ 8.a.  Further, "The Parties' respective goods and/or services in connection with which their respective marks used are distinct and non-overlapping."  *Id*. at ¶ 8.b.  The Consent Agreement recognizes that there is no likelihood of confusion for the use of the EMERSON QUIET KOOL mark for both air conditioners and dehumidifiers.  Finally, as with the 2011 Consent Agreement, the 2009 Consent Agreement was freely assignable.  *Id*. at ¶ 13 ("Either Party may license or assign its respective rights hereunder . . . .").

Third, whether or not Defendants ratified the 2011 Consent Agreement is irrelevant.  In the 2009 and 2011 Consent Agreements, Emerson Electric agreed that the marks can coexist and that air conditioners and dehumidifiers could be sold under the EMERSON QUIET KOOL mark without injury to Emerson Electric's marks.  Emerson Electric has not plead any changed

---

[5] *See* Ex. H to the Complaint at ¶ 10 ("This Agreement shall not operate to alter, amend, replace or terminate the Consent Agreement dated August 21, 2009…which shall remain in effect…").
[6] Any argument that the 2011 Consent Agreement does not specifically discuss dehumidifiers is of no moment.  Both parties agreed in the 2009 Consent Agreement that the marks could coexist for dehumidifiers.  Nothing in the 2011 Consent Agreement refutes that representation and, by its very terms, the 2011 Consent Agreement affirms that the 2009 Consent Agreement survives.

6

circumstances since the Consent Agreement and any purported failure to ratify the Consent Agreement does not undo Emerson Electric's previous agreement.  Further, proper assignment of a trademark results in the assignee stepping into the shoes of the assignor and comes with all of the goodwill connected with a particular business.  *Premier Dental Prod. Co. v. Darby Dental Supply Co.*, 794 F.2d 850, 853 (3d Cir. 1986).

As to Plaintiff's trademark cancellation claim, the Consent Agreement granted the right to Airwell to register the EMERSON QUIET KOOL mark.  Nowhere does the Consent Agreement allow Emerson Electric to cancel the '893 Registration simply because the rights to the registration have been assigned.

### III.     Emerson Electric Does Not Meaningfully Dispute the Factual Evidence Supporting Laches

Emerson Electric fails to raise any meaningful factual dispute regarding laches other than its unsupported allegation that sales of products bearing the EMERSON QUIET KOOL mark began in May 2017.  That allegation is made without any supporting information or even the identification of a single product that Emerson Electric believes was launched on that date.  In contrast, the only verifiable fact related to the issue of laches was in the declaration of Isaac Xiao, the former president of the third-party manufacturer of Emerson Quiet Kool-branded air conditioners, Midea North American Company.  D.I. 13 at ¶ 1.  Mr. Xiao declared under oath that the EMERSON QUIET KOOL mark has been used in commerce at least as early as 2012 and provided photographic evidence.  Plaintiffs did not allege any facts to rebut Mr. Xiao's testimony.

In any event, to remove any doubt as to sales under the EMERSON QUIET KOOL mark, submitted herewith is the Supplemental Declaration of Isaac Xiao which attaches purchase

7

orders showing sales of EMERSON QUIET KOOL-branded products from 2013 through 2016. *See* Supplemental Declaration of Isaac Xiao at ¶¶ 4-7 and Exs. 3 through 6.

### IV.    The Unfair Competition Claim Fails Because Emerson Electric Does Not Have a Horizontal Business Relationship with Defendants

Emerson Electric does not dispute that it does not sell competing products, i.e. air conditioners or dehumidifiers. The best Emerson Electric can muster is that it sells air conditioner *parts*. *See* Complaint at ¶ 7. Although 6 Del. C. § 2532 may not require direct competition, *Livery Coach, L.L.C. v. Music Express/East, Inc.* requires that the parties are in a horizontal business relationship for standing to exist. 245 F. Supp. 3d 639, 648-649 (D. Del. 2017). A horizontal business relationship exists when parties are "on the same market level" and offer "similar products." *Id*. Air conditioner *parts* are not air conditioners or dehumidifiers. The Consent Agreement's recognition that there was no likelihood of confusion by using the EMERSON QUIET KOOL mark on air conditioners is proof that no horizontal relationship exists.

Emerson Electric's argument that standing is different for false advertising and unfair competition claims is a distinction without a difference. *See UHS of Delaware, Inc. v. United Health Services, Inc.*, 227 F. Supp. 3d 381, 403 (M.D. Pa. 2016) (collecting cases and concluding that *Lexmark Int'l v. Static Control Components, Inc.*, 134 S. Ct. 1377 (2014) applies equally to all claims under 15 U.S.C. § 1125(a)); *see also Lexmark Int'l*, 134 S. Ct. at 1391 ("a plaintiff suing under § 1125(a) ordinarily must show" and the "right to sue under § 1125(a)").

To succeed under *Lexmark*, a plaintiff must show that it comes within the "zone of interests" protected by § 1125(a). *Id*. That includes showing that it has suffered damages from Defendants' conduct by pleading facts supporting such damages. *See Ahmed v. Hosting.com*, 28 F. Supp. 3d 82, 91 (2014). Here, Emerson Electric's Complaint fails to state any fact that shows

8

Emerson Electric will or has been damaged.  Indeed, the Consent Agreement stated that *any confusion over the marks is unlikely and the two marks could coexist*.  There are no damages here to convey standing.

## V. The Cybersquatting Claim Cannot Be Saved By An Unsupported Allegation

Emerson Electric's argument that a mere boilerplate allegation of bad faith intent is sufficient to preserve its cyber-squatting claim ignores, once again, that unsupported allegations should be given no credit.  Paragraph 81 of the Complaint, in its entirety reads, "Upon information and belief, Defendants registered the Infringing Domain Name with the bad faith intent to profit from the goodwill Emerson Electric has developed in the EMERSON Marks."  Parroting an element of the claim is simply not enough to survive a motion to dismiss.  Emerson Electric must come forward with facts to support the allegation.  Here, this claim is even weaker because the Anticybersquatting Consumer Protection Act ("ACPA") also includes a safe harbor provision stating that bad faith intent "shall not be found in any case in which the court determines that the person believed and had reasonable grounds to believe that the use of the domain name was fair use or otherwise lawful." 15 U.S.C. § 1125(d)(1)(B)(i)-(ii).  Based on the Consent Agreement, EQK believes it has rights to the EMERSON QUIET KOOL mark and therefore its registration and use of the domain name www.emersonquietkool.com do not violate the ACPA.

## VI. The Abandonment Claim Also Must Fail For Lack Of Factual Support

Emerson Electric's claim for abandonment must be dismissed for failing to sufficiently plead an intent to abandon.  As explained in the case cited by Emerson Electric in its brief, "[t]o establish the defense of abandonment under the Lanham Act it is necessary to show not only acts indicating a practical abandonment, *but an actual intent to abandon*.  *Koninkijke Philips Elecs.*

9

*N.V. v. Hunt Control Sys., Inc.*, C.A. No. 11-3684, 2016 WL 3545529, at *10 (D.N.J. June 29, 2016) (emphasis added). In support of its claim, Emerson Electric only states that "[t]he mark of the '893 Registration has been abandoned due to nonuse with intent not to resume use." Complaint at ¶ 111. That, without more, is insufficient. Further, the public record and the allegations of the Complaint show that no party ever intended to abandon the '893 Registration.

Airwell, the applicant for the '893 Registration, and Emerson Electric entered into the 2009 Consent Agreement prior to registration. Complaint at ¶¶ 35-36. Clearly, in 2009 Airwell intended to use the EMERSON QUIET KOOL mark. Emerson Electric and Airwell then entered into the 2011 Consent Agreement. Prosecution then continued on the application that would eventually become the '893 Registration until February 17, 2015 when the mark was registered. D.I. 12, Ex. F. Less than three years later, the '893 Registration was assigned on January 10, 2017 to Defendant EQK. *Id*. Nevertheless, despite the succession of entities that viewed the value of the mark to be so significant that they continued prosecution and transferred rights in the mark as recently as approximately 14 months ago, Emerson Electric would have the Court believe that the EMERSON QUIET KOOL mark was *intended* to be abandoned. Notwithstanding Emerson Electric's lack of facts showing intent, the public record clearly demonstrates that there was never any intent to abandon the mark. The abandonment claim should be dismissed.

## CONCLUSION

For the reasons set forth in Defendants' opening brief and this reply brief, Defendants' motion to dismiss the Complaint in its entirety should be granted.

                                            POTTER ANDERSON & CORROON LLP

                                  By:  */s/ Philip A. Rovner*
                                            Philip A. Rovner (#3215)
                                            Jonathan A. Choa (#5319)
                                            Alan R. Silverstein (#5066)
                                            Hercules Plaza
                                            P.O. Box 951
                                            Wilmington, DE 19899
                                            (302) 984-6000
                                            provner@potteranderson.com
                                            jchoa@potteranderson.com
                                            asilverstein@potteranderson.com

Dated:  March 23, 2018                            *Attorneys for Defendants*