IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

EMERSON ELECTRIC CO.,

  Plaintiff,

v.

EMERSON QUIET KOOL CO. LTD., and
HOME EASY LTD.,

  Defendants.

C.A. No. 17-1846-LPS

Phillip A. Rovner, Jonathan A. Choa, Alan R. Silverstein, POTTER ANDERSON & CORROON LLP, Wilmington, DE

 Attorneys for Plaintiff

Adam W. Poff and Robert M. Vrana, YOUNG CONAWAY STARGATT & TAYLOR, LLP, Wilmington, DE

Michael P. Brennan, George D. Moustakas, Lisa M. DuRoss, HARNESS, DICKEY & PIERCE, PLC, Troy, MI

 Attorneys for Defendants

**MEMORANDUM OPINION**

March 28, 2019
Wilmington, Delaware


STARK, U.S District Judge:

Pending before the Court is a motion to dismiss (D.I. 11), filed by Emerson Quiet Kool Co. Ltd. and Home Easy Ltd. (together, "Defendants"), the complaint filed by Plaintiff Emerson Electric Co's ("Emerson Electric's" or "Plaintiff's") (D.I. 1). Having considered the parties' briefs (D.I. 12, 16, 18), the Court will grant-in-part and deny-in-part Defendants' motion.

I.     BACKGROUND

According to the Complaint, Plaintiff Emerson Electric owns the EMERSON marks and uses the EMERSON marks on "products that play a significant role in the temperature, humidity level and overall comfort of the home, such as air circulators, fans, air conditioning compressors, HVAC controls, humidifiers, humidifying products and thermostats." (D.I. 1 ¶ 7) Plaintiff has used and promoted the EMERSON marks since at least 1890. (*Id.* ¶ 8)

U.S. Trademark Registration No. 4,688,893, for the word mark EMERSON QUIET KOOL, was filed on March 1, 2010 and is currently registered to Defendant Emerson Quiet Kool Co. Ltd. (*Id.* ¶ 32) Defendants use the EMERSON QUIET KOOL mark on "window and wall room air conditioning units and dehumidifiers." (*Id.* ¶ 22)

Plaintiff sued Defendants for allegedly infringing upon and misappropriating Plaintiff's EMERSON marks. (*Id.* ¶ 5) Specifically, Plaintiffs claim: (1) trademark infringement under 15 U.S.C. § 1114 (*id.* ¶¶ 51-59); (2) trademark infringement, unfair competition, and false designation of origin under 15 U.S.C. § 1125(a)(1)(A) (*id.* ¶¶ 60-66); (3) trademark dilution under 15 U.S.C. § 1125(c) (*id.* ¶¶ 67-75); (4) violation of the Anticybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d) (*id.* ¶¶ 76-86); (5) trademark dilution under 6. Del. C. § 3313 (*id.* ¶¶ 87-89); (6) unfair competition under 6. Del. C. § 2532 (*id.* ¶¶ 90-95); (7) common law trademark infringement, unfair competition, and misappropriation (*id.* ¶¶ 96-99); and (8)

1

breach of contract (*id.* ¶¶ 100-08). Among the relief Plaintiff seeks is cancellation of United States Trademark Registration No. 4,688,893. (*Id.* ¶¶ 109-16)[1]

## II. LEGAL STANDARDS

Evaluating a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) requires the Court to accept as true all material allegations of the complaint. *See Spruill v. Gillis*, 372 F.3d 218, 223 (3d Cir. 2004). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1420 (3d Cir. 1997) (internal quotation marks omitted). Thus, the Court may grant such a motion to dismiss only if, after "accepting all well-pleaded allegations in the complaint as true, and viewing them in the light most favorable to plaintiff, plaintiff is not entitled to relief." *Maio v. Aetna, Inc.*, 221 F.3d 472, 481-82 (3d Cir. 2000) (internal quotation marks omitted).

A well-pleaded complaint must contain more than mere labels and conclusions. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A plaintiff must plead facts sufficient to show that a claim has substantive plausibility. *See Johnson v. City of Shelby*, 135 S. Ct. 346, 347 (2014). A complaint may not be dismissed, however, for imperfect statements of the legal theory supporting the claim asserted. *See id.* at 346.

---

[1] The parties' briefing makes reference to *Emerson Radio Corp. v. Emerson Quiet Kool Co.*, 2018 WL 1169132 (D.N.J. Mar. 6, 2018), a case brought by a different plaintiff – Emerson Radio Corp., which also holds EMERSON marks – against the same Defendants as here. The parties dispute the relevance of the *Emerson Radio* Court's denial of a motion to dismiss. (*See* D.I. 16 at 2 n.3; D.I. 18 at 2-3) The Court agrees with Defendants that "while some facts of course overlap, the decision of the New Jersey court concerned a different, unrelated plaintiff and was based on a substantively different set of allegations." (D.I. 18 at 3)

"To survive a motion to dismiss, a civil plaintiff must allege facts that 'raise a right to relief above the speculative level on the assumption that the allegations in the complaint are true (even if doubtful in fact).'" *Victaulic Co. v. Tieman*, 499 F.3d 227, 234 (3d Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. At bottom, "[t]he complaint must state enough facts to raise a reasonable expectation that discovery will reveal evidence of [each] necessary element" of a plaintiff's claim. *Wilkerson v. New Media Tech. Charter Sch. Inc.*, 522 F.3d 315, 321 (3d Cir. 2008) (internal quotation marks omitted).

The Court is not obligated to accept as true "bald assertions," *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (internal quotation marks omitted), "unsupported conclusions and unwarranted inferences," *Schuylkill Energy Res., Inc. v. Pa. Power & Light Co.*, 113 F.3d 405, 417 (3d Cir. 1997), or allegations that are "self-evidently false," *Nami v. Fauver*, 82 F.3d 63, 69 (3d Cir. 1996).

## III. DISCUSSION

Defendants seek to dismiss the entirety of the Complaint. They assert several bases for dismissing one or more of Plaintiff's claims: (1) all claims fail because Plaintiff consented to the use of the EMERSON QUIET KOOL trademark (*id.* at 6-8); (2) the Lanham Act claims are barred by the doctrine of laches (*id.* at 8-10); (3) the unfair competition claims fail because Plaintiff lacks standing (*id.* at 10-12); (4) the claim that the EMERSON QUIET KOOL mark was abandoned fails because Plaintiff has not plausibly pled the required "intent to abandon" (*id.* at 12-14); and (5) the cybersquatting claim fails because Plaintiff has not plausibly pled the required "bad faith intent" (*id.* at 14; *see also* D.I. 18 at 9). The Court will address each contention in turn.

### A. Consent

Defendants contend that, in a 2011 agreement (D.I. 1-1 Ex. H) ("2011 Consent Agreement" or "Agreement"), Plaintiff provided consent for Defendants to use the EMERSON QUIET KOOL mark (D.I. 12 at 6-7), and further that Plaintiff has not plausibly alleged any breach of this agreement (*id.* at 7-8). Thus, to Defendants, the 2011 Consent Agreement requires that every one of Plaintiff's claims must be dismissed. (*Id.* at 8) The Court does not agree.

Plaintiff contends that the 2011 Consent Agreement does not even apply to Defendants.[2] Even assuming it does, the Complaint plausibly alleges that Defendants are in breach of the Agreement "for promoting their products in a way that leads consumers to associate Defendants with Emerson Electric or its goods and/or services." (D.I. 1 ¶ 182; *see also* D.I. 1-1 Ex. H, 2011 Consent Agreement at 2) ("Each party agrees not to promote, advertise, or distribute its respective goods and/or services in any way that would lead consumers to associate it with the other party or its goods and/or services.") Plaintiff includes in its Complaint a screenshot of a website that sells a dehumidifier bearing the EMERSON QUIET KOOL mark yet associates the dehumidifier with "Emerson Electric Manufacturing Company" (i.e., Plaintiff). (*See* D.I. 1 ¶¶ 43-46) Plaintiff's allegation of consumer confusion is plausible.[3]

Defendants argue that Plaintiff has not plausibly plead a breach of contract because Plaintiff, in the 2011 Consent Agreement and an earlier 2009 agreement (D.I. 1-1 Ex. G) ("2009

---

[2] Plaintiff argues that Defendants cannot enforce the 2011 Consent Agreement because: (1) they are "not . . . part[ies] to the Consent Agreement and do[] not have successive or other rights thereunder" (D.I. 1 ¶¶ 38, 39; D.I. 16 at 4); (2) their abandonment of the EMERSON QUIET KOOL mark voids the Consent Agreement (D.I. 1 ¶ 40; D.I. 16 at 4); and (3) the Agreement does not extend to Defendants' dehumidifiers (D.I. 1 ¶ 42). Plaintiff's claims are not defeated as a matter of law by the Agreement even if Defendants are beneficiaries of that Agreement.

[3] Defendants' contention that "the Complaint never identifies a single dehumidifier product sold by Defendants or any example of consumer confusion" lacks merit. (D.I. 18 at 5)

4

Consent Agreement"), agreed that the Emerson marks and the EMERSON QUIET KOOL mark then-existed without confusion, and Plaintiff does not allege any facts showing that the use of the EMERSON QUIET KOOL mark has now become more confusing. (*See* D.I. 18 at 5-7) In fact, the Consent Agreements only state that the parties' respective marks "are, or can be made to be, sufficiently different in their entireties as to . . . prevent likelihood of confusion" and that the parties "do not ***anticipate*** any confusion" arising from the use of their marks. (D.I. 1-1 Ex. G, 2009 Consent Agreement ¶¶ 7, 8 (emphasis added); D.I. 1-1 Ex. G, 2011 Consent Agreement ¶¶ 4, 5) (emphasis added)) At best for Defendants this suggests that Plaintiff failed in 2009 and 2011 to anticipate the EMERSON QUIET KOOL mark could be used in 2017 (and thereafter) in a confusing manner – a possibility that does not, at this stage, defeat any of Plaintiff's claims.

**B.     Laches**

The doctrine of laches consists of two elements: (1) "inexcusable delay in bringing suit," and (2) "prejudice to the defendant as a result of the delay." *Santana Prod., Inc. v. Bobrick Washroom Equipment, Inc.*, 401 F.3d 123, 138 (3d Cir. 2005). Whether a delay is "inexcusable" is determined by looking to "the most analogous" state statute of limitations. *Id.* at 135. The most analogous Delaware statute of limitations to Lanham Act claims is the three-year statute of limitations for non-violent tort claims. *See Sanofi-Aventis v. Advancis Pharm. Corp.*, 453 F. Supp. 2d 834, 856 (D. Del. 2006); 10 Del. C. § 8106 (specifying causes of action subject to 3-year statute of limitations as including "action[s] to recover damages caused by an injury unaccompanied with force or resulting indirectly from the act of the defendant"). Therefore, if Plaintiff has brought its claim more than three years after it arose, Defendant enjoys a "presumption of inexcusable delay and prejudice." *Santana*, 401 F.3d at 138.

Defendants contend that Plaintiff's Lanham Act claims are barred by the doctrine of laches. (D.I. 12 at 8-10) Defendants argue that because the EMERSON QUIET KOOL mark

5

was registered in 1979, "Plaintiff (or its predecessor-in-interest) was obligated to bring this claim at least thirty years ago." (*Id.* at 8) Defendants also dispute the allegation in the Complaint that "the EMERSON QUIET KOOL mark was not used in commerce until May 2017 and that the brand 'was inactive for many consecutive years preceding Emerson Quiet Kool's 2017 launch.'" (*Id.* at 10) (quoting D.I. 1 ¶ 37)

Defendants' arguments are unpersuasive. Laches is an affirmative defense and cannot be a basis for dismissing a claim unless its applicability is apparent on the face of the complaint. *See Victaulic Co. v. Tieman*, 499 F.3d 227, 234 (3d Cir. 2007) ("[W]e will not rely on an affirmative defense . . . to trigger dismissal of a complaint under Rule 12(b)(6).") Here, a defense of laches is not apparent on the face of the Complaint. Instead, the Complaint alleges that (1) "the actual date of first use in commerce of the mark shown in the '893 Registration was not until May 2017;" and (2) "the Emerson Quiet Kool brand was inactive for many consecutive years." (D.I. 1 ¶ 37) The Court must take these well-pled factual allegations as true – and, doing so, there was no inexcusable delay in filing this suit on December 22, 2017. *See Sanofi-Aventis*, 453 F. Supp. 2d 834, 856 (D. Del. 2006) (finding no inexcusable delay where Plaintiffs filed suit two years and two months after gaining actual knowledge of infringing acts).

Defendants dispute the allegations in the Complaint, arguing that, in reality, their use of the EMERSON QUIET KOOL mark has been ongoing since 2012, which is more than three years prior to the filing of the Complaint. (D.I. 12 at 10 (citing D.I. 13, Xiao Decl.); D.I. 18 at 7-8 (citing D.I. 18-1 Exs. 3-6)) Defendants' denials of the well-pled factual allegations, and Defendants' affidavits, are not properly considered at the motion to dismiss stage. *See In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) ("As a general matter, a

district court ruling on a motion to dismiss may not consider matters extraneous to the pleadings.").

C.  **Unfair Competition**

Plaintiff has standing to bring its federal and state unfair competition claims. A plaintiff suing under the Lanham Act's Section 1125(a) ordinarily must show injury to "a commercial interest in reputation or sales" that (1) "flow[s] directly" from deception wrought by the defendant's conduct, and (2) "occurs when deception of consumers causes them to withhold trade from the plaintiff." *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 131-33 (2014). Similarly, under the Delaware Deceptive Trade Practices Act ("DTPA"), 6 Del. C. § 2532, a litigant must show injury to a "business or trade interest" that is caused by the defendant's "interference by unfair or deceptive trade practices" with the "horizontal relationships between various business interests." *Grand Ventures, Inc. v. Whaley*, 632 A.2d 63, 70 (Del. 1993).

The Complaint plausibly alleges that Defendants have marketed their products in a way that has caused and is likely to cause consumer confusion as between Plaintiff and Defendants. (D.I. 1 ¶¶ 43-46) In addition, the Complaint plausibly alleges that this confusion "has harmed, and will continue to harm, [Plaintiff's] goodwill . . . and its business reputation" as a manufacturer and seller "of high-quality HVAC solutions." (*Id.* ¶¶ 18, 20, 43, 45) These are cognizable injuries both to Plaintiff's "commercial interest in reputation" (as required by federal law) and to Plaintiff's "business or trade interest" (as required by Delaware law). *See Lexmark*, 572 U.S. at 132; *Grand Ventures*, 632 A.2d at 70.

Defendants' reliance on this Court's decision in *Livery Coach Sols., L.L.C. v. Music Express/E., Inc.*, 245 F. Supp. 3d 639, 648 (D. Del. 2017), is misplaced. (*See* D.I. 12 at 11-12; D.I. 18 at 8) *Livery Coach* held that unfair competition law did not provide standing to

7

customers who, like the plaintiff in *Livery Coach*, were "hoodwinked into purchasing a disappointing product" from a defendant. 245 F. Supp. 3d at 648 (quoting *Lexmark*, 572 U.S. at 132). Here, by contrast, Plaintiff and Defendants are not in a vertical (e.g., consumer-producer) relationship but, rather, in a horizontal (i.e., producer-producer) relationship,[4] which gives Plaintiff standing to press its unfair competition claims.

Defendants argue that Plaintiff's products are not sufficiently "similar" to Defendants' products, stating that "[a]ir conditioner *parts* are not air conditioners and dehumidifiers." (D.I. 18 at 8) (emphasis in original) However, neither federal nor Delaware unfair competition law requires a plaintiff to be a direct competitor of a defendant. *See Lexmark*, 572 U.S. at 136 (rejecting "bright-line" rule that categorically prohibits suits by noncompetitors); 6 Del. C. § 2532(b) ("In order to prevail in an action under this chapter, a complainant need not prove competition between the parties."). Rather, the key inquiry is proximate causation: "whether the harm alleged is proximately tied to the defendant's conduct." *Lexmark*, 572 U.S. at 136. For the same reasons given above, the Complaint plausibly alleges that Plaintiff has been harmed by Defendants' conduct. (*See* D.I. 1 ¶¶ 18, 20, 43-46)

### D. Abandonment

The Lanham Act provides that:

> A mark shall be deemed to be 'abandoned' . . . when its use has been discontinued *with intent not to resume* such use. Intent not to resume may be inferred from circumstances. Nonuse for 3 consecutive years shall be prima facie evidence of abandonment.

15 U.S.C. § 1127 (emphasis added).

---

[4] A "horizontal relationship" is one that "exists between at least two businesses on the same market level, because they manufacture similar products in the same geographic region, or are direct competitors." *Chase Bank USA, N.A. v. Hess*, 2013 WL 867542, at *5 (D. Del. Mar. 7, 2013), *report and recommendation adopted*, 2013 WL 5314706 (D. Del. Sept. 20, 2013).

8

Defendants contend that the Complaint does not plausibly plead "intent not to resume use" of the EMERSON QUIET KOOL mark. (D.I. 12 at 12-13) Specifically, Defendants argue that "[t]he fact of the sale of goodwill and marks in the 2008 bankruptcy of Fedders North America, the subsequent proceedings before the Trademark Trial and Appeal Board, the recording of the assignments and the filing of an intent-to-use application all directly contradict any inference that there has been an abandonment of the goodwill and marks assigned to Emerson Quiet Kool by Plaintiff's predecessor." (*Id.* at 13)

Again the Court disagrees. The Complaint alleges that "the EMERSON QUIET KOOL mark was not in use in commerce as of the claimed date of first use of November 5, 2014 . . . [and] the Emerson Quiet Kool brand was inactive for many consecutive years preceding Emerson Quiet Kool's 2017 launch." (D.I. 1 ¶ 34) Taking these allegations to be true and drawing all reasonable inferences in favor of Plaintiff, these allegations plausibly provide "prima facie evidence of abandonment" or, at minimum, circumstances from which "[i]ntent not to resume may be inferred." *See* 15 U.S.C. § 1127. Defendants' efforts to contradict the well-pled factual allegations cannot prevail at this stage of the proceedings.

### E.  Cybersquatting

The Anticybersquatting Consumer Protection Act (ACPA) provides, in relevant part:

> A person shall be liable in a civil action by the owner of a mark . . . if . . . that person . . . has ***a bad faith intent to profit from that mark*** . . . and registers, traffics in, or uses a domain name that . . . in the case of a mark that is distinctive at the time of registration of the domain name, is identical or confusingly similar to that mark . . . .

15 U.S.C. § 1125(d)(1)(A) (emphasis added).

The Complaint alleges that Defendants' use of the emersonquietkool.com domain violates the ACPA. (D.I. 1 ¶¶ 76-86) Defendants argue that the Complaint does not plausibly

9

allege the "bad faith intent" requirement of the ACPA. (*See* D.I. 12 at 14; D.I. 18 at 9) The Court agrees with Defendants.

Plaintiff alleges that "Defendants registered the Infringing Domain Name ***with the bad faith intent to profit from the goodwill Emerson Electric*** has developed in the EMERSON Marks." (D.I. 16 at 16 (quoting D.I. 1 ¶ 81) (emphasis added)) However, Plaintiff's allegation is merely a conclusory, speculative, bald assertion, lacking any "***factual content***" to support a "reasonable inference" of bad faith intent. *See Iqbal*, 556 U.S. at 678 (emphasis added); *Victaulic*, 499 F.3d at 234; *Morse*, 132 F.3d at 906. For instance, the Complaint does not allege that Defendants "inten[ded] to divert consumers from [Plaintiff's] online location to a site accessible under [Defendants'] domain name;" "offer[ed] to transfer, sell, or otherwise assign [Defendants'] domain name to [Plaintiff] or any third party for financial gain without having used, or having an intent to use, the domain name in the bona fide offering of any goods or service;" "provi[ded] . . . material and misleading false contact information when applying for the registration of the domain name;" or "regist[ered] or acqui[red] . . . multiple domain names which [Defendants] know[] are identical or confusingly similar to marks of others." 15 U.S.C. § 1125(d)(1)(B)(i) (listing factors court may consider in determining whether person has "bad faith intent"). In fact, the Complaint may arguably be read to allege that Defendants come within 15 U.S.C. § 1125(d)(1)(B)(ii), the ACPA's safe harbor provision. *Compare* 15 U.S.C. § 1125(d)(1)(B)(i) ("In determining whether a person has bad faith intent, [a court may consider] the trademark . . . rights of the person, if any, in the domain name . . . .") *with* D.I. 1 ¶ 32 (acknowledging that U.S. Trademark Registration No. 4,688,893, for word mark EMERSON QUIET KOOL, is currently registered to Defendant Emerson Quiet Kool Co. Ltd.).

For the above reasons, the Court will dismiss Plaintiff's cybersquatting claim. However, because it appears that amendment would not be futile, this dismissal will be without prejudice to Plaintiff to amend its cybersquatting claim.

## IV. CONCLUSION

An appropriate Order follows.