IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| EMERSON ELECTRIC CO., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 17-1846-LPS-JLH |
| | ) | |
| EMERSON QUIET KOOL CO. LTD., and | ) | **REDACTED -** |
| HOME EASY LTD.,  | ) | **PUBLIC VERSION** |
| | ) | |
| Defendants. | ) | |

## <u>LETTER TO THE HONORABLE JENNIFER L. HALL FROM ADAM W. POFF</u>

Dated: September 11, 2020

OF COUNSEL:
George D. Moustakas
Lisa M. DuRoss
HARNESS, DICKEY & PIERCE, PLC
5445 Corporate Drive, Suite 200
Troy, MI 48098
(248) 641-1600
mbrennan@hdp.com
gdmoustakas@hdp.com
lduross@hdp.com

Joel R. Samuels
HARNESS, DICKEY & PIERCE, PLC
7700 Bonhomme, Suite 400
Clayton, MO 63105
(314) 726-7509
jsamuels@hdp.com

YOUNG CONAWAY STARGATT &
TAYLOR, LLP

Adam W. Poff (No. 3990)
Robert M. Vrana (No. 5666)
Rodney Square
1000 North King Street
Wilmington, DE 19801
302-571-6600
apoff@ycst.com
rvrana@ycst.com

*Attorneys for Plaintiff*



**WILMINGTON**
RODNEY SQUARE

**NEW YORK**
ROCKEFELLER CENTER

**Adam W. Poff**
P 302.571.6642
F 302.576.3326
apoff@ycst.com

September 11, 2020

**<u>Via ECF Filing</u>**
The Honorable Jennifer L. Hall
United States District Court for the District of Delaware
J. Caleb Boggs Federal Building
844 North King Street
Wilmington, DE 19801

**<u>REDACTED - PUBLIC
VERSION</u>**

Re:   *Emerson Electric Co. v. Emerson Quiet Kool Co. Ltd. and Home Easy
       Ltd.,* No. 17-cv-01846-LPS-JLH, D. Del.

Dear Judge Hall,

We write on behalf of Plaintiff Emerson Electric Co. ("Emerson Electric") to defend the common interest privilege ("the Privilege") that the United States District Court for the District of New Jersey confirmed, under identical facts and judicial support as presented here, in a suit brought against these Defendants.[1] In the New Jersey action, Judge Kiel, having considered the same arguments Defendants make here, denied Defendants' motion to compel, ruling "that [Emerson Radio] and Emerson Electric Co. share a common interest in preventing actual or likely confusion by the alleged improper actions of defendants, and therefore, the Privilege applies." Ex. 1. Defendants' attempt at a second bite at the proverbial apple must fail.

Emerson Radio Corp. ("Emerson Radio"), the plaintiff in the New Jersey suit, and Emerson Electric each seek redress for Defendants' infringing use of the mark EMERSON QUIET KOOL. Emerson Electric and Emerson Radio share a common legal interest in stopping Defendants' infringement and entered into a Common Interest Agreement. Ex. 2. Communications shared pursuant to the Common Interest Agreement are the subject of Defendants' motion to compel. Those communications are protected under both the Privilege and the work product doctrine.

Defendants contend that two rights holders seeking to enjoin the same conduct by the same defendants is somehow improper. Defendants offer no substantiation for their claim, nor any justification for setting aside the Privilege. Defendants seek readjudication here of the New Jersey court's recognition of the Privilege based on the same arguments and law. Ex. 3. As noted above, Judge Kiel denied Defendants' motion to compel, ruling "that [Emerson Radio] and Emerson Electric Co. share a common interest in preventing actual or likely confusion by the alleged improper actions of defendants, and therefore, the Privilege applies." Ex. 1. Judge Kiel directed Emerson Radio to prepare and submit a privilege log "setting forth all documents

---

[1] *Emerson Radio Corp. v. Emerson Quiet Kool  Co. Ltd. and Home Easy Ltd.*, No. 2:17-cv-05358-SDW-LDW (D. N.J.).

withheld from production based on the Privilege." *Id.* Defendants *did not* seek reconsideration of Judge Kiel's order and instead ask this Court to reach a different result.

Emerson Electric and Emerson Radio each use, and own federal registrations for, marks consisting or comprising EMERSON for different types of goods. For almost a century, Emerson Electric and Emerson Radio have reached agreements regarding their use and registration of their respective EMERSON marks, and safeguarding against third-party unauthorized use. In 2004, Emerson Electric and Emerson Radio executed a General Trademark Agreement, which ███████

███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
████████████ The Common Interest Agreement ████████
███████████████████████████████████████████████

████████████████████████ █The documents at issue were all exchanged in furtherance of the common legal interest – prosecuting trademark infringement claims and stopping Defendants' infringing use. *See Major League Baseball Properties, Inc. v. Salvino, Inc.*, No. 00 CIV.2855 JCF, 2003 WL 21983801, at *1 (S.D.N.Y. Aug. 20, 2003) (upholding common interest privilege over communications regarding enforcement of trademark rights).

The common interest privilege "protects communications between clients and attorneys allied in a common legal cause" *AgroFresh Inc. v. Essentiv LLC*, No. CV 16-662 (MN), 2019 WL 4917894, at *2 (D. Del. Oct. 4, 2019)(citations removed). The privilege "allows attorneys representing different clients with similar legal interests to share information without having to disclose it to others. *In re Teleglobe Commc'ns Corp.*, 493 F.3d 345, 364 (3d Cir. 2007), *as amended* (Oct. 12, 2007).[3] The parties' legal interests need only be "substantially similar," not identical. *Teleglobe,* 493 F.3d at 365; *Louisiana Mun. Police Retirement System v. Sealed Air Corp.*, 253 F.R.D. 300, 310 (D. N.J. 2008)("The interests of the parties need not be identical, any may even be adverse in some respects")(citations removed).

Defendants assert that it is "antithetical" to apply the Privilege because Emerson Electric and Emerson Radio are separate companies with separate trademark rights and therefore have "purely a commercial interest" in stopping Defendants' infringement. This does not make sense. The Privilege is designed to protect communications between unrelated companies. The Privilege applies even if the parties have different interests and does not require an identical legal strategy. *Louisiana*, 253 F.R.D. 309-11. Moreover, Defendants do not explain how Emerson Electric and Emerson Radio have "purely a commercial interest" in stopping Defendant's infringement.[4]

---

[2] The Common Interest Agreement ████████████████████████████.

[3] Defendants arguments regarding use of the term "joint defense" is meritless. The terms "common interest," "community of interest" and "joint defense" are "used interchangeably." *McLane Foodservice, Inc. v. Ready Pac Produce, Inc.,* No. CIV. 10-6076 RMB/JS, 2012 WL 1981559, at *1 (D.N.J. June 1, 2012).

[4] Nevertheless, "the fact there may be an overlap of commercial and legal interests ... does not

Further, although Emerson Electric and Emerson Radio use different EMERSON marks on different products, this does not preclude a shared *legal* interest in protecting their respective trademarks against Defendants infringement.

Defendants cite the fact that there are two suits as justifying their assertion that Emerson Electric and Emerson Radio are "colluding" with each other "presumably to drive Defendants out of business."[5] Defendants lack any basis for this speculation, and the fact that both parties exercise their First Amendment right to assert their respective trademark rights is not a basis to conclude that the common interest does not apply.[6] Quite simply, there is nothing improper about both entities holding Defendants accountable for their unlawful conduct.

Finally, the documents at issue are also designated as attorney work-product. Defendants bear the burden of establishing that a "substantial need" for the documents and/or a waiver of the privilege. *See* FRCP 26(3)(A)(ii); *Louisiana*, 253 F.R.D. at 311 ("The burden of establishing waiver of the work product doctrine falls on. . . the party seeking to establish waiver"). Defendants do not address the work-product designation and have not articulated any need for these documents or any harm that would result from non-disclosure.[7] Defendants' protests of "collusion" are not tied to any recognized legal theory, and, do not justify overriding the work-product designation.

Emerson Electric requests this Court adopt Judge Kiel's approach recognizing that Emerson Electric and Emerson Radio share a common legal interest in stopping Defendants' infringement and upholding the Privilege. Emerson Electric has provided a privilege log[8] identifying the documents withheld on the basis of the Privilege, consistent with the ruling in the New Jersey case. Adopting the same approach here serves the interest of judicial consistency and conserves judicial resources by avoiding an *in camera* review.[9] Defendants have failed to meet their burden demonstrating that production of privileged information is necessary and/or that the common interest privilege does not apply. Defendants' motion should be denied.

---

negate the effect of the legal interests in establishing a community of interest." *MobileMedia Ideas LLC v. Apple Inc.*, 890 F. Supp. 2d 508, 515 (D. Del. 2012)(citations removed).

[5] By Defendants' logic, the mere formation of a joint defense group, which is common in cases before the Court, would seemingly be an act of improper collusion.

[6] Defendants question "why the two parties chose to file two separate cases," however, Defendants have not raised a joinder issue in either case. Emerson Electric submits joinder is improper because both parties have separate claims based on their respective rights.

[7] Defendants' failure to challenge Judge Kiel's order suggests a lack of substantial need for the documents at issue.

[8] Defendants raise alleged inconsistencies in the documents reflected on Emerson Electric's and Emerson Radio's respective privilege logs. Yet, any inconsistencies do not warrant a finding of no community of interest. Moreover, the differences undercut Defendants' claim of "collusion"- if Emerson Electric and Emerson Radio were "colluding," one would expect identical logs.

[9] Judge Kiel considered briefing and oral argument, but did not review the documents *in camera*.

Sincerely,

*/s/ Adam W. Poff*

Adam W. Poff (No. 3990)

cc:  All counsel of record (by email)

# EXHIBIT 1

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| **EMERSON RADIO CORPORATION,** | |
| **Plaintiff,** | **Civil Action No 2:17-cv-05358-SDW-ESK** |
| **v.** | |
| | **<u>ORDER</u>** |
| **EMERSON QUIET KOOL CO. LTD., et al.,** | |
| **Defendants.** | |

  **THIS MATTER** having come before the Court for a status conference to address pending discovery issues; and the Court having reviewed the joint submissions of the parties dated December 6, 2019 (not on ECF) and December 9, 2019 (ECF No. 102); and having conferred with counsel, and for good cause appearing,

    **IT IS on this 11th day of December, 2020 ORDERED THAT:**

1. **Depositions and Subpoena**.  The parties are granted leave to proceed with the depositions of two witnesses for defendants located overseas on or before January 17, 2020.  Additionally, plaintiff is granted leave to issue a subpoena on or before December 30, 2019, to the third-party vendor that assisted in the creation of defendants' website.

2. **Common Interest Privilege/Privilege Logs.**  Defendants' application to compel the production of documents designated by plaintiff to be subject to a common interest privilege (the "Privilege") is denied.  The Court finds that plaintiff and Emerson Electric Co. share a common interest in preventing actual or likely confusion by the alleged improper actions of defendants, and therefore, the Privilege applies.  Nevertheless, plaintiff shall provide a privilege log setting forth all documents withheld from production based on the Privilege.  Additionally, all parties shall provide privilege logs setting forth all documents withheld from production based on any claim of privilege.

3. **Other Requests.**  All other requests in the joint submissions are denied.

     */s/ Edward S. Kiel*
     **Edward S. Kiel**
     **United States Magistrate Judge**

# EXHIBIT 2

# *FILED UNDER SEAL*

# EXHIBIT 3



PANITCH
SCHWARZE

John D. Simmons
(302) 394-6001/fax: (215) 965-1331
jsimmons@panitchlaw.com

December 9, 2019

**Via Email**
The Honorable Edward S. Kiel
United States District Court for the District of New Jersey
Martin Luther King Building & U.S. Courthouse
50 Walnut St., Room PO 08
Newark, NJ 07101

Re:     *Emerson Radio Corp. v. Emerson Quiet Kool Co. Ltd. and Home Easy Ltd.*,
        No. 2:17-cv-05358-SDW-LDW

Dear Judge Kiel:

We represent Defendants Emerson Quiet Kool Co. Ltd. and Home Easy Ltd. in the matter referenced above and write on behalf of all parties to request resolution of a discovery dispute which the parties are unable to resolve despite their best efforts.

***Defendant's Position***

Defendants' Request for Production No. 69 seeks "[a]ny communications between you and Emerson Electric Co." Plaintiff Emerson Radio Corp. ("Emerson Radio") objected to the request as overbroad to the extent it seeks "all" communications, including those not relevant to this action, but as to those relevant to this case,[1] Plaintiff refused to produce them because they are allegedly protected by the common interest privilege, pursuant to a Common Interest Agreement between Plaintiff and Emerson Electric Co. ("Emerson Electric") Exhibit A. Notably, however, Plaintiff has not produced a privilege log regarding these communications.

Defendants also served a subpoena on Emerson Electric seeking documents and a deposition regarding essentially the same information. Emerson Electric also claims the common interest privilege, and Defendants agreed to put the requests to Emerson Electric on hold pending the resolution of this dispute with Emerson Radio.

The common interest privilege only applies where all members of the community "share a common legal interest in the shared communication." *Teleglobe Communs. Corp. v. BCE, Inc. (In re Teleglobe Communs. Corp.)*, 493 F.3d 345, 364 (3rd Cir. 2007). The members thus "must share at least a substantially similar legal interest," if not an identical one. *Id.*, at 365. Emerson Radio claims that the common interest exists "between Emerson Radio and Emerson Electric in

---

[1] Defendants agree that the request as written is overbroad, but submit that any communications between Emerson Radio and Emerson Electric that reference or are related to the Defendants, the Defendants' products, or the Defendants' trademarks and brand names are relevant and should be produced.



PANITCH
Intellectual Property Law
SCHWARZE

Page 2
December 9, 2019

preventing Defendants' unauthorized use of the 'EMERSON' mark and other unlawful acts...."
Exhibit B. Emerson Radio's interest, however, is not similar to Emerson Electric's. By those
two entities' own agreements, their interests are antithetical. Emerson Radio and Emerson
Electric have a series of detailed agreements wherein each party's permitted uses of the mark
EMERSON are delineated. These agreements were made for the purpose of ███████████████
███████████████████████████████████████████████████████████████
████████████████ thus confirming that Emerson Radio's marks do not overlap with Emerson
Electric's. Exhibit C. The agreements also include an agreement that ██████████████████
█████████████████████████████████████ the very products accused of
infringement in this case. *Id.* Further demonstrating the separate and unrelated nature of their
legal interests, Emerson Radio and Emerson Electric do not jointly own any EMERSON marks
and each separately sued Defendants in separate judicial districts over their beliefs of
infringement.

Plaintiff's refusal to provide a privilege log is similarly inappropriate. "[T]o be eligible
for continued protection, the communication must be shared with the *attorney* of the member of
the community of interest." *Teleglobe*, 493 F.3d at 364 (emphasis original). By refusing to
produce a privilege log, Defendants cannot ascertain whether the withheld communications even
meet this prerequisite for claiming the privilege. While Plaintiff should be compelled to produce
all relevant communications with Emerson Electric, their refusal to even produce a privilege log
on clearly relevant documents highlights the impropriety of their blanket assertion of privilege.

Defendants are being hamstrung from putting on their defense by the collusion of
Emersion Electric, a non-party, and Plaintiff Emerson Radio. These two separate companies,
which derive the Emerson name from two unrelated individuals (John Emerson and Victor
Emerson), do not cross-license their marks and are not related. They are distinct third parties.
At the very least, Defendants request the Court review the communications *in camera* so the
Court can ascertain whether Emerson Radio's communications with Emerson Electric are
properly privileged. If the Court's review reveals that Emerson Radio and Emerson Electric's
communications are not about a common legal interest, but instead simply the shared business
interest in driving a competitor into bankruptcy, production of all communications with Emerson
Electric should be compelled.[2]

---

[2] *See King Drug Co. of Florence v. Cephalon, Inc.*, No. 2:06-cv-1797, 2011 U.S. Dist. LEXIS
71806, at *20 (E.D. Pa. July 5, 2011) ("Courts examining this issue have indeed found that the
shared interest must be 'legal.'"); *citing Teleglobe*, 493 F.3d at 365 (members of community-of-
interest must share substantially similar legal interest); *Net2Phone v. Ebay, Inc.*, 2008 U.S. Dist.
LEXIS 50451, 2008 WL 8183817, at *8 (D.N.J. June 26, 2008) (shared interests must be legal,
not solely commercial); *Bank Brussels Lambert v. Credit Lyonnais (Suisse) S.A.*, 160 F.R.D. 437,
447 (S.D.N.Y. 1995) (privilege does not encompass joint business strategy which happens to
include concern about litigation).

# PANITCH
### Intellectual Property Law
# SCHWARZE

*Plaintiff's Position*

Emerson Radio and Emerson Electric separately own federally registrations for the mark "EMERSON" in connection with different categories of goods in different markets. Emerson Electric and Emerson Radio have co-existed since the late 1930's. As a result, Emerson Electric and Emerson Radio have long-standing agreements about the use of their respective marks designed to dispel any consumer confusion. This agreement was most recently restated in the form of a 2004 trademark coexistence agreement (the "Coexistence Agreement," Ex. C). The Coexistence Agreement recites the parties shared desire to

In 2017, Emerson Radio and Emerson Electric learned that Defendants were using the EMERSON mark to sell room air conditioning units and dehumidifiers. Neither Emerson Radio nor Emerson Electric sell room air conditioning units, but both sell goods in adjacent markets— home appliances, in the case of Emerson Radio, and HVAC systems, in the case of Emerson Electric. Both Emerson Radio and Emerson Electric recognized that Defendants' use of the mark was likely to, and in at least one instance had, confused consumers into believing that Defendants' products originated with either Emerson Radio or Emerson Electric. Accordingly, Emerson Radio and Emerson Electric entered into a Common Interest Agreement, in which they

As the New Jersey Supreme Court explained in *O'Boyle v. Borough of Longport*, the doctrine "extends to sharing of trial preparation efforts between attorneys against a common adversary," and "[t]he attorneys need not be involved in the same litigated matter or anticipated matter." 218 N.J. 168, 199 (2014). Federal courts have likewise recognized that "the need to protect the free flow of information from client to attorney logically exists whenever multiple clients share a common interest about a legal matter," *In re Grand Jury Subpoenas*, 83-9 and 84-9, John Doe 89-129, 902 F.2d 244, 248 (4th Cir. 1990) (quoting *United States v. Schwimmer*, 892 F.2d 237, 243–44 (2d Cir. 1989)), including to "plaintiffs who [a]re pursuing actions in different states," *id. See also In re Teleglobe Commc'ns Corp.*, 493 F.3d 345, 364 (3d Cir. 2007) ("[T]he community-of-interest privilege allows attorneys representing different clients with similar legal interests to share information without having to disclose it to others. It applies in



civil and criminal litigation, and even in purely transactional contexts."). The parties' interests need only be "substantially similar," not identical. *Teleglobe*, 493 F.3d at 365.

Defendants conclusory assertion that Emerson Radio and Emerson Electric's interests are not "substantially similar" but instead "antithetical" lacks merit. Emerson Radio and Emerson Electric's interest is the same—preventing Defendants' unauthorized and confusing use of the "EMERSON" mark to sell air conditioning units and dehumidifiers, which both Emerson Radio and Emerson Electric believe infringes their respective marks. The conduct Emerson Radio and Emerson Electric seek to enjoin is the same, and if either prevails in litigation against Defendants, both will achieve their desired result—the cessation of Defendants' infringing use that is confusing consumers and diminishing the distinctiveness of their respective brands.

Defendants make much of the fact that the Coexistence Agreement with Emerson Electric currently precludes Emerson Radio from selling air conditioning units and dehumidifiers. But that does not mean that consumers, when presented with air conditioning units branded with the EMERSON mark, would not assume that they were made by Emerson Radio. Notably, there is no requirement that Emerson Radio sell or market the very same type of goods that it accuses of infringement. For decades, the Lanham Act has recognized the rights of parties to assert claims for infringement arising from non-competing products and goods. Indeed, the *Lapp* factors, which now apply to all trademark infringement cases in the Third Circuit, were originally developed to address confusion between **non-competing goods**. *Interpace Corp. v. Lapp, Inc.*, 721 F.2d 460, 461 (3d Cir. 1983) (affirming the district court's finding on likely confusion between the use of similar marks on "ceramic insulators" and "electrical wire and cable").

Defendants' also insinuate that Emerson Radio and Emerson Electric do not share any legal interests but instead only a "shared business interest in driving a competitor into bankruptcy." This makes no sense. To begin with, neither Emerson Radio nor Emerson Electric is a direct competitor of Defendants. Moreover, Defendants' speculation about the motives behind Emerson Radio and Emerson Electric's respective lawsuits simply ignores the fact that the rights that Emerson Radio and Emerson Electric are asserting are federally issued and presumptively valid legal rights. Indeed, policing infringement is the very point of trademark rights.

Finally, Defendants' request to require Emerson Radio to produce a privilege log should be rejected. As is customary, neither party has logged privileged communications that occurred post-filing of the lawsuit at issue. In fact, Defendants have not produced any privilege log at all, even though Defendants have admitted to pre-suit communications with Chinese counsel to perform trademark searching on the EMERSON QUIET KOOL mark prior to its adoption. In any event, based on Defendants' own position in footnote 1 above, Defendants are seeking discovery of "any communications between Emerson Radio and Emerson Electric that reference or are related to the Defendants, the Defendants' products, or the Defendants' trademarks and brand names." The only such communications between Emerson Electric and Emerson Radio relate to either the filing of Emerson Radio and Emerson Electric's respective lawsuits or post-date such filings. As a result, they are presumptively privileged and need not be logged.



Best regards,

John D. Simmons

# EXHIBIT 4

## *FILED UNDER SEAL*